[Civ. No. 44385. Second Dist., Div. Four. Oct. 7, 1975.]

MARTIN STONE et al., Plaintiffs, Cross-defendants
and Appellants, v.
CITY OF LOS ANGELES, Defendant, Cross-complainant
and Appellant.

**COUNSEL**

Fadem, Berger & Stocker, Fadem, Berger & McIntire and Michael M. Berger for Plaintiffs, Cross-defendants and Appellants.

Burt Pines, City Attorney, Milton N. Sherman, Chief Assistant City Attorney, and John F. Haggerty and James H. Pearson, Assistant City Attorneys, for Defendant, Cross-complainant and Appellant.

**OPINION**

DUNN, J.—On April 11, 1972, plaintiffs Stone filed their complaint and, after defendant City of Los Angeles (hereinafter "city") successfully

demurred to it, plaintiffs filed an "amended and supplemental complaint," followed by another city demurrer which incorporated by reference (Code Civ. Proc., § 430.70) an attached copy of a complaint (L.A. superior court case No. C-37558) it had filed seeking condemnation of plaintiffs' and other properties. Plaintiffs filed a second amended and supplemental complaint in two counts. City's demurrer to count II of this complaint was sustained without leave to amend and city filed an answer to the first cause of action. Thereafter, on June 21, 1973, city filed a cross-complaint against plaintiffs and others, seeking condemnation of plaintiffs' property. Plaintiffs and others answered the cross-complaint.

A supplemental first pretrial was held (no copy of any final pretrial order is in the transcript furnished to us), the supplemental pretrial order reciting that: an original first pretrial had been held on April 4, 1973, and that, before that, city had filed on August 28, 1972, a direct action (No. C-37558) to condemn the plaintiffs' property and other properties; that an order was made May 3, 1973, severing plaintiffs' property in that other action from other properties there involved and ordering that plaintiffs' property be consolidated with the action in the present case, city being ordered to file a cross-complaint in which it should allege a direct action to condemn the Stones' property.

On November 16, 1973, judgment was entered: on the complaint by plaintiffs Stone for inverse condemnation in the sum of $150,000 for delay by city in commencing its eminent domain action, such damages being incurred by the Stones "as a proximate result of said delay for the period of September 7, 1971, to March 10, 1973;" on city's cross-complaint for condemnation the judgment awarded cross-defendants $2,112,175; of this amount, cross-defendants other than the Stones were to be paid a portion. The judgment further allowed to the Stones costs of $428.15 and allowed another cross-defendant $36 for costs; however, the judgment specifically ordered that the Stones "shall not recover any costs, disbursements and/or expenses, for attorney, appraisal, and/or expert fees" under Code of Civil Procedure section 1246.3.

City appeals from the judgment;[1] the Stones cross-appeal from those parts of the judgment denying them "recovery of their litigation costs" and "to the extent that said judgment limits the inverse condemnation recovery . . . to damages suffered during a period after one year before the filing of their claim for damages."

---

[1]City also purports to appeal from the court's order denying its motion for a new trial. Such order is not appealable (Code Civ. Proc., § 904.1), although we may review it (Code Civ. Proc., § 906) on appeal from the judgment.

City advances two contentions in its opening brief: (1) the award of $150,000 to plaintiffs for "loss of use" was neither a proper element of damages nor was it based upon admissible evidence and (2) the admission of evidence of a proposed zoning of the property was prejudicially erroneous. Appellants Stone, on their appeal, contend the award of $150,000 erroneously was based upon restriction to a period of "before September 7, 1971 or after March 10, 1973," and it was error to limit them as the trial court did in its jury instructions; also, that they should have been allowed all litigation costs.

The trial court conducted a hearing, before a jury was impaneled, to determine if there truly was an issue of fact to be submitted to the jury regarding any "unreasonable delay" by city in instituting its condemnation action and if there was an issue regarding the nature of damages, if any, awardable to the Stones. Testimony was taken and the court determined such issues did exist.

It was stipulated, without conceding relevancy, that on March 10, 1973, cross-defendants were served with summons in the direct condemnation action filed August 28, 1972, the trial court later on observing to the jury that no one could conclude city had delayed unreasonably after the Stones were served; the court found the Stones filed a damage claim with city on September 6, 1972, stating that one year before this date would be September 7, 1971, and ordered that the pretrial order be amended to provide as an issue: "Is the plaintiff prevented from recovering against defendant for the period before September 7, 1971 by reason of failure to property [*sic*] file a claim before September 6, 1972."

### The City Appeal

City's first contention has been stated. City argues the award of $150,000 for loss of use, based upon loss of reasonable fair rental value, was not proper, urging us to conclude the Stones' expert witness's testimony "was lacking in foundation, speculative and irrelevant;" there is no contention that the award was improper in amount, if allowable at all. Metcalfe, Stones' expert, testified to his opinion of reasonable rent based upon airport-related industrial use of the property; Metcalfe fixed the value of the property for highest and best use at $7,500 per acre (the property comprised 324.95 acres) and figured rental of 8 percent on a year-to-year basis. Defendant objected on the grounds of irrelevancy, speculation and lack of foundation. The objection was overruled. City's argument is that the property had never been developed industrially nor

was rent received by the Stones from any tenant on that basis; accordingly, it is argued, Metcalfe's opinion was based upon irrelevant matter; also, since Metcalfe relied, in part, upon rental received on noncomparable property, it was speculative and without foundation. Metcalfe testified that part of the Stones' property was zoned for agricultural and part for industrial zoning. (The Stones' responding brief states: "The subject property was 325 acres, approximately half zoned industrial and half zoned agricultural.") Metcalfe concluded that the part zoned "industrial" would have to be changed to "AM" zoning, meaning "airport industrial zoning." The Stones argue that Metcalfe's opinion was based upon the property "as is" and not upon any reasonable probability of a zoning change.

■ First to be determined, of course, is whether damage for loss of use based upon claimed lost rental value, is properly to be awarded at all in a case such as this. Both sides argue the holding of our Supreme Court in *Klopping* v. *City of Whittier* (1972) 8 Cal.3d 39 [104 Cal.Rptr. 1, 500 P.2d 1345].

In the present case, the city's airport commission, on August 21, 1968, adopted a resolution to create Palmdale Intercontinental Airport. The ordinance of the city council to take the property was passed February 4, 1969, and became effective March 23, 1969; considerable publicity followed. The Stones purchased the property for $1,900 per acre through an escrow closing in December 1967. City's original complaint to condemn the Stones' property was filed August 28, 1972, and served on the Stones in the early part of 1973. After the announcement of the intercontinental airport project, the Stones determined that it was not economically justifiable to spend the money needed to repair and replace the pumps, irrigation pipes and other farm equipment on the property. The farm lease was renewed soon after it expired August 25, 1968, but rental income "constantly diminished as equipment wore out" and, whereas the growing of alfalfa or carrots was the original farming endeavor, ". . . eventually it became non-economical altogether, and is now pasture land for sheep . . . ." Stone testified that he took no steps toward further industrial development of the property. He had hired a man and "in general I did go forward rather rapidly . . . with planning the development of the property on a comprehensive basis," but, "[b]ecause of the decision to condemn the property I couldn't see that I could do anything with the land further. It didn't make sense to go on spending money concerning an industrial development."

Metcalfe testified that the rental value of the property was a net 8 percent return to the Stones, *all* costs of maintenance to be paid by the tenant. Metcalfe testified: "The practice is to set the initial rental up on a net return to the owner basis, and provide that the tenant shall pay the expenses. . . . The rental to be paid will be a net rental to the owner and it [the lease] specifically provides that the tenant shall take care of all of the expenses." Metcalfe testified, in essence, that the property had a rental value of 8 percent, net, per year from 1968-1973, but the Stones were unable to realize such percentage, either by leasing or using the property, because of its threatened condemnation for use in the proposed intercontinental airport. Thus, the Stones lost the difference between the rental value and the actual farming (or grazing) income. To us, that theory seems a credible one to submit to a jury; city's objections go to the weight to be accorded to the testimony, not its admissibility.

City argues that *Klopping, supra,* 8 Cal.3d, does not hold that a property owner receiving full market value for his property is entitled also to recover damages caused by delay, pointing out that, here, the Stones received a judgment for full market value. However, we conclude:

First, city's delay in filing its original complaint to condemn the property (from March 1969 to August 28, 1972) raised a fact question for the jury to resolve, i.e.: was the delay an unreasonable one? The jury resolved this issue against city. (*Klopping* v. *City of Whittier, supra,* 8 Cal.3d at p. 52; and see Code Civ. Proc., § 1243.1, effective Mar. 4, 1972.)

Second, there is no merit in city's contention "that if the jury was to award fair market value unaffected by the announcement of the project, plaintiffs were not entitled to any additional damages," particularly in light of the Supreme Court's approval in *Klopping, supra,* (8 Cal.3d at pp. 47-51) of the language in *Buena Park School Dist.* v. *Metrim Corp.* (1959) 176 Cal.App.2d 255, 258-259 [1 Cal.Rptr. 250] and its disapproval of part of *Atchison, Topeka & Santa Fe Ry. Co.* v. *Southern Pacific Co.* (1936) 13 Cal.App.2d 505 [57 P.2d 575] and our Supreme Court's language in *Klopping* (at p. 58) wherein it states: "Sarff complains that he was unable to rent the property in the period following the precondemnation announcements. Under the rules discussed above rental loss is a proper element of recovery."

The Stones were awarded the value of their property as of the date of value (Code Civ. Proc., § 1249) which, here, was the date of trial, i.e.,

September 4, 1973. This is to be distinguished from loss of use damages measured by loss of rents before that time. Accordingly, we disagree with city's argument and conclude such damages were awardable under the evidence.

■ City further urges that damages for loss of use based, in part, on evidence of the Stones' expenses regarding the property and incurred during the delay period, were not proper, arguing that the expenses "do not relate to diminution in the value of the real property." An accountant for the Stones testified without objection that for the year 1969 the Stones' ranch expenses in four categories (property taxes, insurance, management fee and incidental accounting) totaled $14,065. For the year 1970, over city's objection on the grounds of lack of relevancy and "speculative," the accountant testified such expenses came to $16,861; for 1971 to $18,628; for 1972 to $19,882; figures also were given for parts of 1968 and 1973. However, the court, in its instructions to the jury, advised them not to consider damages for any time before September 7, 1971, "or after March 10, 1973."

To the extent that the testimony included times before or after the dates instructed upon, the testimony must be deemed irrelevant although not prejudicially so. (As earlier stated herein, city does not quarrel with the *amount* of damages.) The expenses testified to did not enter generally into the valuation of the property for condemnation purposes, although expense would seem to be relevant for "delay" damages.[2] We believe that damages for "delay" were awardable; hence, that the relevant testimony regarding expenses properly was received.

We conclude it is not relevant, as urged by city, that "expenses . . . would have had to have been paid by plaintiffs irrespective of the announced condemnation." From the evidence, the expenses exceeded any income received from the property.[3] It is true that such expenses *might* have been incurred by the Stones during the period of delay but it

---

[2]We concede there is ground for confusion here, since the Stones' complaint allegedly was for inverse condemnation and *Klopping, supra,* speaks of the same thing. Tort damages for delay are not mentioned in *Klopping,* although, in Code of Civil Procedure section 1243.1, there is provision not only for inverse condemnation damages but also a provision that "the court may, in addition, or in the alternative, if it finds that the rights of the owner have been interfered with, award damages for any such interference by the public entity." We need not determine if such statute was effective here, and may conclude that it merely attempted to express the Legislature's intention, having been enacted December 3, 1971. (*Klopping, supra,* 8 Cal.3d at p. 57.)

[3]In most instances, the income testified to was less than the expense for the same years and income showed decline.

must be recalled that the Stones contended they could not sell the property during this period because of the condemnation announcement; hence, they may have incurred expenses that they otherwise might not have had.

■ Finally, city contends the trial court erred in overruling its objection based upon relevancy, made during cross-examination of Hughes, its expert witness, to a question relating to whether the new zone proposed by Los Angeles County permitted industrial use of the property.

Stones' expert witness, Metcalfe, had testified to his opinion that the Stones' property was worth $2,437,125 on September 4, 1973 (the date of value). He testified the reasons for his opinion included a belief that the property was available for and capable of development as airport-related industrial property, which means that "where you have Lockheed, North American and other major air frame and aircraft manufacturers that there is a need for backup-type industrial operations . . . that the secondary operations are ones which can be installed without interfering with the airport and where the airport will not interfere with them . . . ." His opinion of the value of Stones' property also rested, he testified, upon the sales pattern of comparable properties in the area, newly completed freeway access, inflation and the area's general growth. City argues that Metcalfe testified the "A" part of the property's zoning would require a change to "AM" and that this could be accomplished without a problem. Part of his answer ("I don't anticipate any problem there") was stricken, leaving only his testimony that an AM zone would be required.

City argues that, until Hughes was under cross-examination by Stones' attorney, the Stones produced no evidence showing that any reasonable probability existed that a zoning change would be accomplished. At that time, Hughes was asked if the proposed zoning of the subject property contemplated an industrial usage. The trial court held a hearing out of the jury's presence to determine if city's objection was well taken. After hearing the evidence, the trial court stated: "The evidence before the court is that the Board of Supervisors has or intends to have the land of the landowners in this case changed from the zone that it is now to some other zone. If that is the case it would appear under the circumstances that that is some evidence of reasonable probability of a zone change. So I think it would appear then that the questions should be proper in the presence of the jury." Then, over city's objection, Hughes answered the question "Yes."

We need not determine if the trial court's ruling was erroneous for, even if it were, Metcalfe's opinion regarding the value of the property did not rest exclusively upon the probability of a change in the zone; he rested his opinion regarding the value of the Stones' property upon other factors, as stated. Under the circumstances we conclude that, even if the answer were impermissible, it was nonprejudicial (Cal. Const., art. VI, § 13.)

*Stones' Appeal*

In their appeal, the Stones contend as earlier stated herein, first arguing that the trial court erred in restricting them so that they could not recover damages for any period before September 7, 1971, (the "claim" against city having been filed Sept. 6, 1972.)

Government Code section 911.2 provides that " . . . A claim . . . shall be presented . . . not later than one year after the *accrual* of the cause of action." (Italics added.) Stones argue that the filing of a claim was not required of them at all, relying upon *Pierpont Inn, Inc.* v. *State of California* (1969) 70 Cal.2d 282 [74 Cal.Rptr. 521, 449 P.2d 737] and urging that their cause of action did not "accrue" on September 7, 1971. *Pierpont, supra,* is readily distinguishable from the present case.

Stones contend not only that the limited time period was wrong, but that newly enacted Code of Civil Procedure section 1243.1 applied, arguing that it did not require the filing of the claim at all. City contends the code section is substantive legislation and should not be applied retroactively and, even if applicable, it did not excuse the failure to file a claim. We need not determine city's contention, since we conclude that Code of Civil Procedure section 1243.1 does not do away with the requirement of Government Code section 911.2 that a claim be filed when there is an action for money damages. (Gov. Code, § 945.4.) Stones' action was for money damages. It was not analogous, as Stones contend, to a mandate proceeding.

Thus, we do not believe that Code of Civil Procedure section 1243.1 excuses failure to file a claim. Indeed, *Dorow* v. *Santa Clara County Flood Control Dist.* (1970) 4 Cal.App.3d 389 [84 Cal.Rptr. 518] states (p. 391): "Compliance with the claims requirements is a condition precedent to suit for damages for inverse condemnation."

The court did not err in limiting the jury to consideration of a period from one year before the Stones' claim was filed. Thus, although the rule

is that a new and separate cause of action arose with each day's delay by city (*Bellman* v. *County of Contra Costa* (1960) 54 Cal.2d 363, 369 [5 Cal.Rptr. 692, 353 P.2d 300]; *Phillips* v. *City of Pasadena* (1945) 27 Cal.2d 104, 107 [162 P.2d 625]), still, the Stones *did* file a claim. That claim must have been intended to summarize and contain all causes of action accruing before that time. Since the claim was filed September 6, 1972, a period of one year before that time (Gov. Code, § 911.2) would fall within the statutory requirement.

■  The trial court properly let the jury determine when, after the city ordinance to condemn was announced, a reasonable time had elapsed. We note that if Code of Civil Procedure section 1243.1 is applicable, it allows the condemning entity six months within which to initiate condemnation action. *Klopping* v. *City of Whittier, supra,* 8 Cal.3d, on the other hand, fixes no time limit, as it speaks in terms only of unreasonable delay.

■  The second contention advanced by the Stones is that they should have been allowed expenses for attorney, appraisal "and/or expert fees" under Code of Civil Procedure section 1246.3.

Code of Civil Procedure section 1246.3 (enacted Nov. 18, 1971 by ch. 1574, Stats. 1971) reads in pertinent part: "In any inverse condemnation proceeding brought for the taking of any interest in real property, the court . . . shall determine and award . . . such sum as will, in the opinion of the court . . . reimburse such plaintiff for his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of such proceeding."

The trial court held the code section did not apply because: (1) it became effective after the Stones filed their complaint and (2) it was not retroactive. Although the trial court's reasons were incorrect, the outcome is, in any event, the same.

City, in responding to Stones' appeal, argues that the code section could not apply in any event because the Stones' action was not brought for the "taking" of an interest in real property but for "damages" based upon the *Klopping, supra,* case. City's responding brief states: "There was no 'taking' of Property Owner's property . . . because of the alleged delay. The subject property was valued as of September 4, 1973, the date of trial. If their property interest had been 'taken' the date of value would have been at an earlier date, namely the date of the alleged 'taking.' "

Whether Code of Civil Procedure section 1246.3 became effective after the Stones filed their complaint seems immaterial in view of the holding in *Parker* v. *City of Los Angeles* (1974) 44 Cal.App.3d 556, 566 [118 Cal.Rptr. 687] where, as city's brief concedes, "Sec. 1246.3 was applied retroactively."

After the jury was sent out to deliberate its verdict, the trial court heard testimony regarding Stones' costs, including attorneys' and experts' fees. The trial court "found" a portion of the fees was attributable to the inverse condemnation action and a portion to the direct condemnation suit. However, the judgment made no mention of this "finding;" it is the judgment from which the parties appeal. Neither we nor the trial court are bound by such "finding."

We agree that Code of Civil Procedure section 1246.3 allows attorneys' fees and the pertinent costs claimed, only for a "taking" of any interest in real property, not for mere damage. Our state Constitution, as it read at the time of trial, stated (art. I, § 14, now § 19): "Private property shall not be taken *or damaged;*" (italics added); however, allowance of attorneys' fees or the pertinent costs is not mentioned therein; the allowance of costs and/or attorneys' fees is, in any event, not a matter of constitutional right but of policy set by the Legislature. (*County of Los Angeles* v. *Ortiz* (1971) 6 Cal.3d 141, 145-146 [98 Cal.Rptr. 454, 490 P.2d 1142]; *City of Industry* v. *Gordon* (1972) 29 Cal.App.3d 90, 94 [105 Cal.Rptr. 206]; 15 Cal.Jur.3d, Costs, § 3, pp. 607-608.) In our case, the Legislature did not see fit to permit the claimed costs or attorneys' fees for other than a "taking."

Stones contend they are, in any event, entitled to fees in the direct condemnation suit, pursuant to Code of Civil Procedure section 1249.3. However, they point to no evidence in the record which would invoke the statute, even if it were found to be applicable.

In summary, we affirm the judgment.

Files, P. J., and Kingsley, J., concurred.

Petitions for a rehearing were denied October 22 and 23, 1975, and the petitions of all the parties for a hearing by the Supreme Court were denied December 24, 1975. Mosk, J., was of the opinion that the petition should be granted.