[Civ. No. 45246. Second Dist., Div. Three. Feb. 26, 1976.]

CITY OF LOS ANGELES, Plaintiff and Respondent, v.
JOHN HENRY MONAHAN et al., Defendants and Appellants.

RAYMOND F. JOHNSON et al., Plaintiffs and Appellants, v.
CITY OF LOS ANGELES, Defendant and Respondent.

■

## COUNSEL

Fadem, Berger & Stocker, Fadem, Berger & McIntire, Howard M. Knee and Gregory M. Bergman for Defendants and Appellants and for Plaintiffs and Appellants.

Burt Pines, City Attorney, Milton N. Sherman, Chief Assistant City Attorney, and James H. Pearson, Assistant City Attorney, for Plaintiff and Respondent and for Defendant and Respondent..

## OPINION

**COBEY, Acting P. J.**—Property owners, Gould, Johnson, Shope, Wheeler and Monahan, appeal from a judgment in condemnation in favor of the City of Los Angeles, decreeing that the city is entitled to acquire for airport purposes a fee simple interest in their various residential properties located near the Los Angeles International Airport.

Appellants contend that in the judgment they should have been awarded *Klopping* damages (see *Klopping* v. *City of Whittier,* 8 Cal.3d 39 [104 Cal.Rptr. 1, 500 P.2d 1345]), prejudgment interest from June 23, 1967,[1] and litigation costs pursuant to Code of Civil Procedure section 1246.3. At oral argument the parties stipulated that for the purpose of disposition upon this appeal the judgment under appeal may be deemed to include a denial of both prejudgment interest and litigation costs.

---

[1]Appellants also assert that they should have received interest from the date of the judgment (Sept. 28, 1973) upon both the judgment and the claimed prejudgment interest.

PROCEEDINGS BELOW

Appellants were 5 of the approximately 100 property owners who brought a proceeding (Munger v. City of Los Angeles, Los Angeles County Super. Ct. No. 931315) in inverse condemnation against the city early in 1968 for damages done to their homes, families and persons by reason of the opening on June 23, 1967, and the operation thereafter of a runway for commercial jet aircraft at the Los Angeles International Airport.[2] Subsequently on March 19, 1971, the city filed the Monahan proceeding (No. 998954) to condemn a fee interest in 10 of the Munger case properties, including that of the Monahans. Later in July 1971 the four remaining property owners before us stipulated in writing with the city that their cases might be severed for trial from the Munger case and tried separately as in effect a proceeding by the city to condemn a fee interest in their residential properties. This stipulation incorporated a previously agreed upon date of value for the various properties of January 1, 1971. The following month, August 1971, the trial court ordered the stipulation into effect and later that month a first pretrial conference order was filed in the Monahan case fixing the date of value therein as the aforementioned March 19, 1971, in accordance with Code of Civil Procedure section 1249 and providing that the Monahans would dismiss all of the claims they had advanced in Munger. This date of value was thereafter maintained by stipulation[3] and on January 11, 1973, a stipulation was filed providing that the valuation issues in the other four cases before us might be tried with the Monahan case. This trial started in March 1973 before Judge Kaufman, but the evidence taken therein was limited to the claimed *Klopping* damages as the parties stipulated to the fair market values of the five parcels at issue.

The trial court limited its findings of fact and conclusions of law, aside from the valuation issues, generally to the *Klopping* issues. It found, among other things, that "there were no delays at any time due to the fault of the City of Los Angeles in bringing the parcels to trial" and

[2] A second runway at the airport for the use of commercial jet aircraft was opened on June 29, 1970. (See *Parker* v. *City of Los Angeles,* 44 Cal.App.3d 556, 560 [118 Cal.Rptr. 687].)

[3] Appellants have challenged in the trial court and here the dates of value used. These challenges are without merit. No cognizable grounds have been advanced for setting aside the stipulations and orders thereon setting them. The fact that the trial court insisted that a date of value be set for the parcels other than that of the Monahans to reflect the stabilization of jet noise, etc., damage from the airport's operations (see *Pierpont Inn, Inc.* v. *State of California,* 70 Cal.2d 282, 292 [74 Cal.Rptr. 521, 449 P.2d 737]) does not constitute such a basis in view of the further fact that the date of value adopted, namely January 1, 1971, was adopted by stipulation of all counsel.

concluded that *Klopping* did not apply to the factual situation before it.[4] It thereafter on September 28, 1973 entered and filed the judgment in condemnation under appeal.

### THE 1971 STIPULATIONS AND ORDERS WERE BINDING UPON THE PARTIES TO THEM

■ The July 1971 stipulation in the Munger case was negotiated at some length between counsel for the parties. Although appellants constantly emphasize that a primary purpose of this stipulation was to conclude the litigation earlier,[5] this was merely part of their motivation. In the Munger case initially the city denied that any of the plaintiffs therein, including appellants, had sustained compensable damages. In 1971, however, the city modified this position with respect to the five parcels before us. First, on the aforementioned March 19, 1971, it initiated a proceeding to condemn directly the fee interests of certain property owners, including the Monahans. Next in July 1971 it stipulated in effect that it was taking the entire fee interests of the other four property owners before us in return for their expressly agreeing that there remained no issues in inverse condemnation as to these properties and that they would dismiss with prejudice forever as against the city all their claims for taking or other damages upon the entry of a judgment for the fair market values of the fee interests in their properties. Thus the bargain embodied in this stipulation between the city and appellants (other than the Monahans) was that the city would pay them for a total taking of their properties (rather than for only an avigation easement with respect to them) in return for a waiver by them of all claims of inverse condemnation damages. As previously indicated, this was also apparently the bargain the city struck in effect with the Monahans.[6]

There is no equitable basis in the record to relieve appellants from these bargains. (See Civ. Code, § 1689; *Gonzales* v. *Pacific Greyhound*

---

[4]It also concluded that the July and August 1971 stipulation and order were binding upon all parties to the stipulation and "that the loss of use and enjoyment damages sought by the property owners constitutes a duplication of compensation as the law now exists." This just quoted conclusion of law was incorrect. (See *Stone* v. *City of Los Angeles*, 51 Cal.App.3d 987, 993-994 [124 Cal.Rptr. 822].)

The trial court also found, conditional upon the propriety of such an award being subsequently established, *Klopping* damages with respect to each parcel.

[5]This purpose was not realized as the Monahan trial before Judge Kaufman followed most of the Munger trial before Judge Levit. In fact the judgment in Munger was entered before that in Monahan.

[6]Appellants' co-plaintiffs in Munger received awards for the taking of avigation easements only plus prejudgment interest and litigation costs.

*Lines,* 34 Cal.2d 749, 755 [214 P.2d 809].) Aside from an early trial, they obtained exactly that for which they bargained.

### *Klopping* DAMAGES ARE NOT RECOVERABLE

■ The city takes the position that the aforementioned stipulations and orders preclude any award of *Klopping* damages in this case. We do not agree. Our Supreme Court made clear in *Klopping* v. *City of Whittier, supra,* 8 Cal.3d 39, 58, that such damages may be recovered either in direct condemnation or in inverse condemnation. It is true that appellants stipulated that the only issue in these cases was the fair market values of their respective properties as of the two dates of value, but these stipulations were made many months before our Supreme Court recognized *Klopping* damages for the first time. Waiver ordinarily is the intentional relinquishment of a known legal right. (See *Blair* v. *Pitchess,* 5 Cal.3d 258, 274 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206]; cf. Civ. Code, § 1542.) Accordingly, we hold that appellants did not intend to waive in these documents their respective rights to claim *Klopping* damages.

■ Unfortunately for them, as the trial court in effect concluded, no basis exists here for such damages. In *Klopping* our Supreme Court held that a condemnor is liable in either inverse or direct condemnation for any diminution in the market value of a condemnee's property resulting from any unreasonable precondemnation conduct on the part of the condemnor. (*Klopping, supra,* 8 Cal.3d 39, 52, 58.) In so holding, our Supreme Court carefully differentiated between damages in inverse condemnation arising from a de facto taking of a condemnee's property and a *Klopping* damages situation. (*Id.,* at pp. 46-47, 52.) In a de facto taking situation, the valuation date becomes the date of the taking and, among other things, prejudgment interest is allowed from that date. (See *Parker* v. *City of Los Angeles, supra,* 44 Cal.App.3d 556, 564-565.) In a *Klopping* situation, on the other hand, the valuation date remains unchanged and the condemnor becomes liable only for the diminution in the market value of the condemnee's property that is shown to have been caused by its unreasonable precondemnation conduct. Stated otherwise, *Klopping* damages are damages for the condemnee's loss of use or enjoyment of his adversely affected property occasioned during the precondemnation period by the condemnor's unreasonable conduct.[7]

---

[7]This is why there is no duplication in damages in awarding a property owner both *Klopping* damages, on the one hand, and taking and severance damages on the other.

The only possibly unreasonable precondemnation conduct on the part of the city that appellants may point to in this case is the city's delay between 1967 and 1971 in initiating direct condemnation proceedings or their equivalent with respect to the five parcels before us. As we will point out shortly though, this delay was not the cause of the diminution in market value that appellants' residential properties suffered.

Furthermore, our review of the record indicates that there is substantial evidence to support the trial court's already quoted express finding "[t]hat there were no delays at any time due to the fault of the City of Los Angeles in bringing the parcels to trial."

The situation before us is quite unlike that presented in *Stone* v. *City of Los Angeles, supra,* 51 Cal.App.3d 987, 992-993, where the Stones were prevented from making a profitable use of their large income property in the vicinity of the Palmdale Airport between 1969 and 1972 because of its threatened condemnation and were, therefore, allowed *Klopping* loss of use damages. Here the diminution in the market value of appellants' residential properties was due entirely to the adverse effect of jet operations at the Los Angeles International Airport and such damages in inverse condemnation had been expressly waived by appellants in the aforementioned documents. In other words, appellants experienced no precondemnation damages other than those in inverse condemnation that they expressly waived.

### NEITHER PREJUDGMENT INTEREST NOR LITIGATION COSTS ARE RECOVERABLE

As indicated earlier, the Monahan case from its inception was and remained a direct condemnation proceeding. As also indicated previously, the effect of the 1971 stipulation and order with respect to the other four parcels was to convert an inverse condemnation proceeding with regard to them into a direct condemnation.

In direct condemnation the compensation and damages awarded draw legal interest from the date of the entry of judgment unless possession of the property sought to be condemned has been taken or its taking has

been authorized. (Code Civ. Proc., § 1255b, subd. (a).)[8] No taking of possession occurred or was authorized in this case. Accordingly, property owners are not entitled to any prejudgment interest.

Similarly, since, as just explained, the proceeding before us either always has been or became a direct condemnation proceeding, litigation costs are not recoverable. Their recovery under the authorizing statute (Code Civ. Proc., § 1246.3) is expressly limited to inverse condemnation proceedings. ■ It is true that the statute authorizing the recovery of these costs became effective after the 1971 stipulations and orders were made (Mar. 4, 1972; Stats. 1971, ch. 1574, § 1, p. 3154); but as we noted in *Parker* v. *City of Los Angeles, supra,* 44 Cal.App.3d 556, 567, the justification for allowing litigation costs in inverse condemnation and not in direct condemnation is that in the former type of proceeding the right to *any* damages is in issue while in the latter only the amount of the damages is. In other words, there is much more risk for the property owner in inverse condemnation than there is in direct condemnation.

DISPOSITION

The judgment under appeal is affirmed.

Allport, J., and Potter, J., concurred.

A petition for a rehearing was denied March 23, 1976, and the opinion was modified to read as printed above.

---

[8]This was the law when the 1971 stipulation was made. (See Stats. 1961, ch. 1613, § 10, p. 3450.)