[Civ. No. 48939. Second Dist., Div. Four. Jan. 30, 1979.]

SHIRLEY A. JONES et al., Plaintiffs and Appellants, v.
CITY OF LOS ANGELES, Defendant and Respondent.

COUNSEL

Irsfeld, Irsfeld & Younger, Bernard Krentzin and Charles W. Stoll for Plaintiffs and Appellants.

Burt Pines, City Attorney, Norman L. Roberts and Leslie R. Pinchuk, Deputy City Attorneys, for Defendant and Respondent.

OPINION

**KINGSLEY, Acting P. J.**—This is an action in inverse condemnation in which appellants claim damages to their property alleging that certain acts of respondent city diminished the value of appellants' real property. In a trial without jury the court found in favor of defendant city. Appellants filed a timely notice of appeal.

Appellants owned a parcel in fee simple on the northwest corner of Franklin Avenue and Orchid Street. Beginning in 1968, defendant city began activities directed toward a public street improvement project known as Franklin-Wilcox, hereinafter, the Franklin Avenue Project. During the next five years, the city engaged in various activities in relation to this project.

Many of the city's proceedings are illustrated in exhibits 1 through 9, but exhibits 1 through 9 were not admitted into evidence and were marked for identification only. Exhibits 10 through 13, showing the city's activities since 1972, were admitted into evidence. The city's condemnation activities included the following:

1. On February 6, 1968, the city engineer informed officers of the department of building and safety that the Franklin Avenue Project should be given emergency priority and asked that all applications for building permits in that area be transmitted to the city engineer (exhibit 1). Exhibit 1A had a diagram of the street alignment.

2. On March 21, a work order was established for the Franklin Avenue Project and it was assigned an emergency priority (exhibit 4).

3. On August 22, 1968, the city began right-of-way acquisition activity in the area (exhibit 2).

4. In June 1970 the city published in the Citizen News and Daily Journal a public notice showing the project as designed and its affect on subject property (exhibits 5 and 5A).

5. In August 1970 the city engineer signed construction plans (exhibit 6).

6. On September 23, 1970, the city engineer issued a report recommending condemnation ordinances for the subject properties and also recommended that authority be obtained for an order of immediate possession (exhibit 7).

7. On January 27, 1971, the city council passed ordinance No. 141525, finding the public interest required taking subject property, and the ordinance directed the city attorney to bring an action to condemn the subject property (exhibit 9).

8. On April 13, 1971, the federal Highway Administration gave stage 1 approval.

9. On December 17, 1971, the city attorney recommended that ordinance No. 141525 be repealed to avoid potential liability by the city under California Code of Civil Procedure section 1243.1 which was to become effective in 1972 (exhibit 10).

10. The recommendation was adopted and ordinance No. 141525 was repealed (exhibits 10A and 11).

11. Letters were mailed on January 21 and 31 telling certain persons their property would be acquired (exhibit 12).

12. On July 13, 1972, a public meeting was held (exhibit 13).

13. On June 30, 1972, the city got stage 2 approval.

14. On September 18, 1972, the public works committee recommended that the project proceed as originally designed (exhibit 14).

15. On October 4, 1972, the city council held a public meeting on the project (exhibit 15).

16. On October 26, the department of traffic requested state engineering assistance (exhibit 16).

17. Appellants filed a claim with the city on January 26, 1973.

18. On July 10, 1973, appellants sold the property.

19. In 1974 a parcel owned by a Mr. Grey was purchased by a bureau of right of way and land.

20. In 1974 a parcel was purchased from Minnie Jarrot.

21. In 1974 the board of public works adopted the city engineer's report recommending that the Franklin Avenue Project be constructed (exhibit 19). However, prior to this, in 1974, there were alternate alignments proposed (exhibit 20) and some of them did not include appellants' property. The purchases made by the city were hardship purchases or were to prevent threatened litigation.

The city never actually condemned plaintiffs' property although resolution No. 14245 authorized by eminent domain acquisition of property within the right-of-way.

I

■ Appellants' first argument is that the acts of the city occurring prior to January 26, 1972, were material on the issue of whether the city's conduct was unreasonable or not, and that the trial court's failure to admit evidence of those acts was prejudicial error. The trial court sustained defendant city's objection to exhibits 1-9 on the ground that city's conduct prior to one year before appellants' claim for damages was irrelevant.

In *Klopping* v. *City of Whittier* (1972) 8 Cal.3d 39 [104 Cal.Rptr. 1, 500 P.2d 1345], the Supreme Court explained the liability of a condemning authority for its unreasonable conduct during precondemnation and post-condemnation activities. The *Klopping* court said (at pp. 51-52) that ". . . when the condemner acts unreasonably in issuing precondemnation statements, either by excessively delaying eminent domain action or by other oppressive conduct, our constitutional concern over property rights requires that the owner be compensated. . , ." The *Klopping* court (at p. 51) then held that a condemnee must be given an opportunity to show that "(1) the public authority acted improperly either by unreasonably delaying eminent domain action following an announcement of intent to condemn or by other unreasonable conduct prior to condemnation; and

(2) as a result of such action the property in question suffered a diminution in market value. [Fn. 5 omitted.]" When we apply the holding of *Klopping* to the case at bar, we must conclude that evidence of the city's acts prior to January 19, 1972, should have been admitted, since those acts were relevant on the issue of whether there was "unreasonable conduct prior to condemnation." It is clear that one cannot accurately show whether or not a city's precondemnation conduct was reasonable without also showing all the prior relevant acts that transpired during the entire course of the city's precondemnation conduct.

The trial court's apparent reliance on *Stone* v. *City of Los Angeles* (1975) 51 Cal.App.3d 987 [124 Cal.Rptr. 822], on the issue of whether the condemner's conduct prior to the one-year period is admissible was misplaced. In *Stone,* the court merely held that damages in inverse condemnation are restricted to those damages occurring during the period of one year prior to filing a claim. This holding in *Stone* related only to the matter of damages and not to the length of time in which the city's acts were admissible to show oppressive conduct or unreasonable conduct.[1] In fact, in *Stone,* the city had filed its original complaint in March 1969, and had delayed to August 1972—a period clearly longer than the one-year period relevant on the issue of damages. While it is true that, under the holding of the *Stone* case, appellants herein cannot recover for damages occurring more than one year prior to filing their claim, all of the city's relevant prior acts in the case at bar were admissible to show "unreasonable conduct."

Respondent argues that, even if it was error to refuse admission into evidence of exhibits 1-9, the evidence was merely cumulative because witness testimony and exhibit 13 covered all matters in exhibits 1-9. We have examined exhibit 13 and the testimony of the witnesses; that exhibit and the testimony do not repeat many of the matters disclosed by exhibits 1-9, which deal with earlier conduct of the city.

Respondent also argues that exhibits 1-9 would have been admissible had plaintiffs been willing to admit those exhibits for only a limited purpose, but defendant asserts that plaintiffs refused to limit the purpose of admitting those exhibits into evidence. We do not agree. City seizes on plaintiffs' phrase, "not exactly," to show plaintiffs refused to limit the purpose of the admission of the exhibits. However, the overall import of plaintiffs' language was that plaintiffs were willing to have the exhibits

---

[1]In *Stone,* we held the question of whether an attorney's delay was unreasonable was a question of fact.

admitted for the purpose of showing "unreasonable delay or oppressive conduct. . . ." In fact, the language by counsel included that very phraseology.[2]

In *Klopping,* the Supreme Court said (at p. 52): "Accordingly we hold that a condemnee must be provided with an opportunity to demonstrate that (1) the public authority acted improperly *either* by unreasonably delaying eminent domain action following an announcement of intent to condemn *or* by other unreasonable conduct prior to condemnation . . . ." (Italics added.) While the early acts of the city herein are not admissible to show "unreasonable delay" because the only delay that is relevant under the cases is delay after an announcement of intention to condemn,[3] these early acts are admissible to show "unreasonable conduct prior to the condemnation" proceedings. The trial court should have admitted exhibits 1-9 to show unreasonable or oppressive conduct by the city.

## II

Plaintiffs argue that, when all the evidence is properly considered, the course of conduct by the city was unreasonable and gave rise to damages on its face. We do not agree. ■ While many cases have held that the adoption of a general plan or mere preliminary activities on the part of the condemner do not give rise to liability in damages for inverse condemnation. (*Selby Realty Co.* v. *City of San Buenaventura* (1973) 10 Cal.3d 110 [109 Cal.Rptr. 799, 514 P.2d 111]; *Smith* v. *State of California* (1975) 50 Cal.App.3d 529 [123 Cal.Rptr. 745]; *Navajo Terminals, Inc.* v.

---

[2]"THE COURT: Well, what you are saying is that you are requesting the receipt of these exhibits for a very limited purpose.
"MR. KRENTZIN [Plaintiffs' counsel]: Well, your Honor, may I continue on that point?
"THE COURT: That is what you are saying.
"MR. KRENTZIN: Not exactly. I am saying that as far as showing unreasonable delay, or oppressive conduct, or any of the other items mentioned, I believe the exhibits are relevant and material."

[3]In *Jones* v. *People* ex rel. *Dept. of Transportation* (1978) 22 Cal.3d 144 [148 Cal.Rptr. 640, 583 P.2d 165], the Supreme Court declined to decide whether or not there must be a "formal resolution to condemn a plaintiff's property" in order to state a cause of action in inverse condemnation where plaintiff was directly and specifically injured in the use of his property. Since we do not rely on the city's "unreasonable delay . . . following an announcement of intent to condemn" but instead we rely on "other unreasonable conduct prior to condemnation," *Klopping* v. *City of Whittier* (1972) 8 Cal.3d 39, 52 [104 Cal.Rptr. 1, 500 P.2d 1345], as our reason for finding error in the trial court's failure to admit the exhibits, the recent case of *Jones* v. *People* ex rel. *Dept. of Transportation* does not affect our decision on this particular issue. In any case, in the case at bar there was an ordinance of intent to condemn.

*San Francisco Bay Conservation etc. Com.* (1975) 46 Cal.App.3d 1 [120 Cal.Rptr. 108], improper delay after a firm declaration of an intention to condemn or other unreasonable conduct prior to condemnation may give rise to such damages. (*Klopping* v. *City of Whittier* (1972) 8 Cal.3d 39 [104 Cal.Rptr. 1, 500 P.2d 1345].) Therefore, the pertinent question that arises is whether the conduct of the city was uncompensable, is mere general planning or was the kind of unreasonable conduct resulting in direct and special interference with plaintiffs' property, such that plaintiffs have a cause of action in inverse condemnation. (See *Jones* v. *People* ex rel. *Dept. of Transportation, supra,* 22 Cal.3d 144;[4] *Selby Realty Co.* v. *City of Buenaventura* (1973) 10 Cal.3d 110 [109 Cal.Rptr. 799, 514 P.2d 111].)

In the case at bar, the city's conduct went beyond the mere tentative planning that the *Selby* court relied on in finding an absence of liability for damages in inverse condemnation. Here the city's conduct includes an ordinance of condemnation later repealed by another ordinance. Although the Supreme Court in *Jones* found it unnecessary to determine whether a resolution is a necessary prerequisite to stating a cause of action in damages, the existence of an ordinance of condemnation is indication that the attorney's conduct has gone beyond the mere general planning of the *Navajo* and *Selby* cases.

However, a showing that the attorney's conduct went beyond mere general planning may not in itself be sufficient to state a cause of action. The claimant must show that obstacles were placed in plaintiffs' path in the use of this land. The court said in *Smith* v. *California* (1975) 50 Cal.App.3d 529, 534 [123 Cal.Rptr. 745]:

▮ "In order to state a case for inverse condemnation there must be an invasion of a valuable property right which the owner possesses and its invasion or appropriation must *directly* and *specifically* affect the landowner to his injury. (*Hilltop Properties* v. *State of California,* 233 Cal.App.2d 349, 355-356 [43 Cal.Rptr. 605, 37 A.L.R.3d 109]; *Selby Realty Co.* v. *City of Buenaventura, supra,* 10 Cal.3d 110.)" (Italics in original.)

In *Selby,* the court found that the county planned no obstacle in the path of plaintiff's use of its land. The court said, "Plaintiff has not been

---

[4]In *Jones,* the Supreme Court declined to state whether a formal resolution of intent to condemn was necessary to state a cause of action, but reiterated that a plaintiff must show an invasion of a property right which directly and specifically affects him to his injury in order to state a cause of action in inverse condemnation.

refused permission by the county to build on or subdivide its county land, and its posture is no different than that of any other landowner along the streets identified in the plan." (10 Cal.3d at 120.) In contrast, in *Jones* v. *People* ex rel. *Dept. of Transportation,* plaintiffs were able to show specific and direct injury because they were denied access to their property.

In the instant case, unlike *Jones,* there was no interference with plaintiffs' use of their land nor was there any specific injury to plaintiffs, nor did the condemner place any obstacles in plaintiffs' path in the use of their land. Therefore, plaintiffs are not entitled to damages.

Plaintiffs in the case at bar alleged that their property could not be sold or developed; but plaintiffs have not cited us any facts supporting that position. The trial court found that the city herein did not interfere with plaintiffs' use of their property, and the evidence supports that finding. Without a showing of interference or obstacles to the use of the land, the city is not liable. Further, exhibits 1-9, which were not admitted into evidence, also do not show interference by the city with plaintiffs' use of their land.[5]

### III

The city argues that any effect of condemnation ordinance 141525 was cancelled by repealing ordinance 141525. It argues that repealing an ordinance rescinds it and obliterates it (*Spears* v. *County of Modoc* (1894) 101 Cal. 303, 305 [35 P. 869]), and that causes of action based on a repealed ordinance are automatically destroyed. (*Cook* v. *La Vina Land Co.* (1934) 3 Cal.App.2d 21 [39 P.2d 458].) We have no quarrel with this general rule of law, but the city can not obliterate oppressive conduct, if such oppressive conduct exists, simply by obliterating an ordinance. The conduct or acts of the city may present a viable source of legal liability (or lack of liability) without relying upon the continuing existence of the ordinance that may have been the catalyst for the city's conduct. We do not by these remarks hold the city's conduct was oppressive. We merely state that the city would not necessarily eliminate legal liability for its conduct simply by eliminating the condemnation

---

[5]Some cases set forth still additional criteria that must be met before a condemner is liable. Where the condemnation of property is subject to many contingencies, the city is not liable in inverse condemnation damages. Some cases require that the plaintiff's property be singled out for unique treatment, and there is an absence of evidence showing that plaintiffs have been singled out for unique treatment. In view of the absence of evidence showing that the city placed obstacles in plaintiffs' paths in the use of their land, we find it unnecessary to discuss this additional criteria.

ordinance. The liability, if any, does not merely stem from a cause of action based on a repealed ordinance. The cause of action, if any exists, is based on alleged oppressive conduct.

There is language in *Klopping, supra,* 8 Cal.3d 57, that supports our view that a cause of action is not affected by the repeal of the ordinance. *Klopping* said that ". . . recovery for loss of rental income after the condemner has excessively delayed bringing an action in eminent domain or has otherwise acted unreasonably is permitted irrespective of whether condemnation proceedings are abandoned or whether they are instituted at all. [Fn. 9 omitted.]" Also in *Jones* v. *People* ex rel. *Dept. of Transportation, supra,* 22 Cal.3d 144, the court said (at p. 154), "It does not follow, of course, that plaintiffs were not harmed by the state's conduct during the time access was denied" even where there is an abandonment of the project.

## IV

Respondent argues that plaintiffs have no cause of action under Code of Civil Procedure section 1243.1 effective March 4, 1972, repealed January 1, 1976. Both parties appear to agree that Code of Civil Procedure section 1243.1 is not the source of plaintiffs' cause of action, if any, because the condemnation ordinance herein and its repeal were passed prior to the effective date of Code of Civil Procedure section 1243.1.[6] The source of plaintiffs' rights, if any exist, is the alleged unreasonable conduct of the city.

And since Code of Civil Procedure section 1245.260 was not effective until January 1, 1976, that section also has no application to this case and does not limit plaintiffs' rights, if any rights exist.[7]

## V

In the case at bar whether or not the city's precondemnation conduct was oppressive or unreasonable was a question of fact, which should have been decided based on evidence of all the relevant prior conduct of the

[6]What we have said here in section IV does not contradict what we have said in section III. The repeal of the condemnation ordinance may affect liability under Code of Civil Procedure section 1243.1, but "oppressive or unreasonable conduct," if any such conduct exists, would not be obliterated by the repeal of the condemnation ordinance.

[7]Since these sections do not apply, the arguments by the parties relating to these sections have not been discussed.

city. We can not say as a matter of law that such conduct by the city was clearly oppressive or unreasonable, and unreasonableness is a matter for the trier of fact. Although the early activities of the city were relevant on the issue of unreasonable conduct and should have been admitted, plaintiffs have not shown that any of the evidence of these early acts, even if admitted, would have shown that plaintiffs' land was treated uniquely or that there was interference by the city in plaintiffs' use of their land. Without such a showing, plaintiffs' cause of action must fail.

The judgment is affirmed.

Jefferson (Bernard), J., and Alarcon, J., concurred.