[Civ. No. 53035. First Dist., Div. Three. Mar. 19, 1982.]

CITY OF FRESNO, Plaintiff and Appellant, v.
CLYDE A. SHEWMAKE et al., Defendants and Respondents.

909

COUNSEL

Hoge, Fenton, Jones & Appel and H. R. Lloyd, Jr., for Plaintiff and Appellant.

Lerrigo, Thuesen, Walters, Nibler & Hedrick, Fadem, Berger & Norton and Michael M. Berger for Defendants and Respondents.

OPINION

**SCOTT, Acting P. J.**—This appeal is from a judgment entered in an eminent domain action brought by appellant, the City of Fresno, to acquire several parcels of real property, each improved with a single family residence, in the vicinity of the Fresno Air Terminal. In addition to determining the fair market value of each of the five parcels at issue, the jury awarded the five homeowners damages because of unreasonable precondemnation delay by the city. (See *Klopping* v. *City of Whittier* (1972) 8 Cal.3d 39 [104 Cal.Rptr. 1, 500 P.2d 1345].) The trial court also awarded three of the homeowners litigation costs, including attorney's fees. (Code Civ. Proc., § 1250.410.) The city appeals only from the awards of *Klopping* damages and litigation costs.

*Facts*

In 1972 the City of Fresno contracted with a consultant for a 20-year master plan of its airport, the Fresno Air Terminal. In July 1973, the city tentatively adopted the consultant's report, which included a recommendation that it acquire 88 homes in Sierra Village, a subdivision northwest of the terminal; the homes of respondents Johnston, Jones, Ewing, Gordon, and Dhuyvetter were among those designated for acquisition. On that date, the city authorized appraisals of the parcels involved. In November 1973, the homeowners were notified by letter of the city's plans, including its purchase priorities. The owners were informed that two and a half to three years would be required to conclude the project.

When the city started this project, it did not have funds on hand to complete all the acquisitions. It anticipated some federal aid in the form of reimbursements; in addition, it intended to issue airport revenue bonds. Its first priority was the purchase of 22 homes within an area designated as the "clear zone," as it was already obligated to acquire these homes by June 30, 1974, pursuant to a prior agreement with the Federal Aviation Agency. When the revenue bonds were eventually sold in April 1976, the city made offers to the remaining property owners, including respondents. The eminent domain action was filed in November 1976, after several owners did not accept the city's offers.

Jury trial commenced to determine: (1) the fair market value of each parcel; (2) whether the city had unreasonably delayed in commencing its eminent domain action; and (3) whether the property owners had

been damaged by the delay. With respect to the question of precondemnation delay damages, respondent's expert appraiser, Robert Beeney, testified that during the two and a half years between the city's decision to acquire respondents' property and the commencement of its condemnation action, respondents suffered a loss in the use and enjoyment of their homes. After proposing one formula which was rejected by the trial court, he was permitted to testify that each homeowner's loss could be measured by the difference between the rental value of his home if unaffected by the airport, and its rental value affected by the project. He estimated that the latter figure would decrease with each year of the delay. There was no evidence that any of these homeowners had ever intended or attempted to rent their homes, either before or after the adoption of the airport master plan. The jury found the city's delay was unreasonable, and awarded each homeowner damages in the sum of approximately 10 percent of his property's fair market value.

## Klopping Damages

First, appellant contends that even if it unreasonably delayed in instituting its eminent domain action, there was no evidence that respondents suffered actual economic damage as a result. Appellant contends that the trial court erred when it instructed the jury that damages for the delay could be based on expert Beeney's rental income loss formula, and that his testimony about that theory should have been stricken. We agree.

In either an inverse condemnation or eminent domain action, the condemner is liable for any diminution in market value which results from an unreasonable delay in the institution of eminent domain proceedings following announcement of intent to condemn, or other unreasonable conduct prior to condemnation. (*Klopping* v. *City of Whittier, supra*, 8 Cal.3d at pp. 51-52, 58.) When property is being rented at the time of a condemnation announcement, any subsequent loss of anticipated rental income may be a measure of its diminished market value. (*Id.*, at p. 53.)

Appellate courts construing *Klopping* have concluded that a condemnee may be entitled to both the full market value of his property as of the date of valuation,[1] and loss of use damages measured by loss of rent

---

[1] The valuation date is generally the date of filing of the eminent domain complaint. (Code Civ. Proc., § 1263.020; see *Klopping, supra*, 8 Cal.3d at p. 52.)

during a precondemnation period. (*City of Los Angeles* v. *Monahan* (1976) 55 Cal.App.3d 846, 852, fn. 7 [127 Cal.Rptr. 763]; *City of Los Angeles* v. *Lowensohn* (1976) 54 Cal.App.3d 625, 635-636, fn. 4 [127 Cal.Rptr. 417]; *Stone* v. *City of Los Angeles* (1975) 51 Cal.App.3d 987, 993-994 [124 Cal.Rptr. 822]; see also 4 Nichols on Eminent Domain (3d ed. rev. 1981) § 12.3151[5] at pp. 500-522.)

However, there must be some evidence of actual loss in order to support an award of *Klopping* damages. (*City of Los Angeles* v. *Lowensohn, supra*, 54 Cal.App.3d at p. 636.) For example, in *Stone, supra*, 51 Cal.App.3d 987, the subject property was a large parcel zoned half-agricultural use, half-industrial use, and was being leased for farming. An expert testified at trial as to the industrial use rental income which the landowners could have received had the property not been threatened with condemnation; the landowner testified that while he had made some plans to develop the property industrially, the pending condemnation halted those plans. The landowner was awarded as precondemnation damages the difference between his actual farming or grazing income and that rental value testified to by the expert. (*Id.*, at pp. 992-993.)

In contrast, in *City of Los Angeles* v. *Lowensohn, supra*, 54 Cal. App.3d 625, the evidence was insufficient to establish any precondemnation damages. The subject property was purchased for investment purposes. Although zoned industrial, it remained vacant and undeveloped from the time of its purchase to the time of the eminent domain proceedings. Its owners never rented it, and there was no evidence of their willingness to do so. Claiming *Klopping* damages, they sought unsuccessfully at trial to introduce testimony by an expert appraiser as to the property's rental value had it been developed for industrial purposes. The appellate court concluded that the evidence was properly excluded, as "there appears to have been no actual loss of rental income or sales with respect to the subject property . . . . [¶] . . . In sum, appellants sought recovery for something that was nonexistent in fact and constituted pure fiction. There is no recovery via condemnation for the taking of a pipe dream." (*Id.*, at p. 636.)

Here the property at issue was single family residential, owner occupied, both before and after any announcement of intent to condemn. There was no evidence that respondents had rented or tried to rent their homes prior to the condemnation announcement, nor that they attempted to do so after that announcement; both factors in expert

Beeney's equation were only hypothetical. While respondents were understandably distressed and unsettled by the impending condemnation of their homes, there is no evidence that they suffered any actual loss of rental income as a result of appellant's delay.

Respondents urge that they suffered loss of use and enjoyment of their homes during the period of delay, and were entitled to compensation. However, *Klopping* did not hold that a property owner is entitled to be compensated for every aspect of his diminished use and enjoyment during a period of unreasonable precondemnation delay; it held only that a property owner is entitled to be recompensed for any diminution in *fair market value* resulting from that delay, and that loss of anticipated rental income is one measure of that diminution. (*Klopping, supra*, 8 Cal.3d at p. 53.)[2] Market value has been defined as the highest price estimated in terms of money which the land would bring if exposed for sale in the open market, with reasonable time allowed in which to find a purchaser, buying with knowledge of all the uses and purposes to which it was adapted and for which it was capable. (*Id.*, at p. 43; see also Code Civ. Proc., §§ 1263.310, 1263.330.) ■ Market value is not necessarily the same as the value of the property to its owner. (*City of Downey* v. *Royal* (1963) 215 Cal.App.2d 523, 528 [30 Cal. Rptr. 159].) Moreover, compensation may be "just" within the meaning of the Constitution without providing complete reimbursement to the owner for all losses suffered by him as a result of condemnation. (*Community Redevelopment Agency* v. *Abrams* (1975) 15 Cal.3d 813, 828 [126 Cal.Rptr. 473, 543 P.2d 905, 81 A.L.R.3d 174], cert. den., 429 U.S. 869 [50 L.Ed.2d 149, 97 S.Ct. 180].)

■ Respondents were properly awarded the fair market values of their homes, as determined by the jury, after testimony as to that value unaffected by the airport acquisition project. Whether or not the city's precondemnation conduct was unreasonable, there is no evidence that respondents lost actual or anticipated rental income during that delay. Consequently, the award of *Klopping* damages cannot be sustained.

### Award of Litigation Expenses

The court awarded attorney's fees to respondents Johnston, Ewing, and Gordon pursuant to Code of Civil Procedure section 1250.410, which provides in relevant part, "If the court . . . finds that the offer of

---

[2]Another method of establishing *Klopping* damages is to show termination or reduction of actual rent. (*Lowensohn, supra*, 54 Cal.App.3d at p. 635, fn. 4.)

the plaintiff was unreasonable and that the demand of the defendant was reasonable viewed in the light of the evidence admitted and the compensation awarded in the proceeding, the costs allowed ... shall include the defendant's litigation expenses." In determining that the offers to these homeowners were unreasonable, the trial court focused on the city's refusal to offer anything for *Klopping* damages. Because we have concluded that the evidence was insufficient as a matter of law to support an award of *Klopping* damages, we must remand the question of litigation expenses for reconsideration, solely in light of the respective parties' offers and demands as to the value of the property.

■ Relying on *Community Redevelopment Agency* v. *Friedman* (1977) 76 Cal.App.3d 188 [143 Cal.Rptr. 160], respondents urge that the city's offers should have included some amount for *Klopping* damages as a factor in negotiation, notwithstanding its position that respondents were entitled to no such award. We disagree, as that case is distinguishable. From that court's somewhat cryptic synopsis of the facts, it appears that the parties *stipulated* to the amount of lost rental income, and that the only question was whether the agency's delay was unreasonable, a question upon which reasonable minds might differ. Under those circumstances, the court suggested that to be reasonable, the agency's settlement offer should have included some figure for *Klopping* damages. Here, however, while persons of sound judgment might disagree as to the reasonableness of the city's conduct, there was no evidence to support a conclusion that respondents lost rental income because of that delay.[3] Accordingly, no offer of *Klopping* damages was necessary.

That portion of the judgment awarding *Klopping* damages is reversed; the matter is remanded for reconsideration of the award of litigation expenses. In all other respects, the judgment is affirmed. Each party to bear its own costs on appeal.

Feinberg, J., and Barry-Deal, J., concurred.

A petition for a rehearing was denied April 16, 1982, and respondents' petition for a hearing by the Supreme Court was denied June 24, 1982. Bird, C. J., and Reynoso, J., were of the opinion that the petition should be granted.

---

[3]By way of comparison, had there been evidence of actual rental loss, but a dispute as to its precise amount, a failure by the city to offer any *Klopping* damages might well have been unreasonable.