[No. B005540. Second Dist., Div. Six. Nov. 25, 1985.]

THE STATE OF CALIFORNIA, Plaintiff and Respondent, v.
VELMA MEYER, Individually and as Executrix, etc., et al.,
Defendants and Appellants.

**COUNSEL**

Fadem, Berger & Norton and M. Reed Hunter for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Marvin Goldsmith, Assistant Attorney General, Robert H. Francis and Mark A. Weinstein, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**STONE, P. J.**—May a landowner, defendant in eminent domain proceedings, properly allege "delay damages" for the first time in a memorandum of costs after the public entity condemner has filed an abandonment of the eminent domain action? He may not. ██ █ Appellants landowners appeal from an order taxing costs made after judgment of dismissal upon the state's abandonment of eminent domain proceedings.[1] They contend the trial court erred in: (1) disallowing delay damages alleged for the first time in the cost bill; (2) awarding inadequate attorneys' fees due to failure to apply a "lodestar multiplier"; (3) disallowing reimbursement of witness fees, trial and messenger expenses; and (4) refusing landowners limited postabandonment discovery.

We find no error in the court's ruling concerning delay damages, application of the "lodestar multiplier," or discovery, but remand the issue of reasonable attorneys' fees, witness and messenger expenses for clarification and redetermination, if necessary, consistent with our opinion. The order is otherwise affirmed.

### FACTS

Appellants landowners, co-owners of parcels No. 4156 and No. 4157, decided in 1971 to develop their beachfront properties for joint use as a

---

[1]In an eminent domain action, an order determining litigation expenses after judgment is appealable. (Code Civ. Proc., § 904.1, subd. (b); *County of Madera* v. *Forrester* (1981) 115 Cal.App.3d 57, 60, fn. 1 [170 Cal.Rptr. 896]; *Oak Grove School Dist.* v. *City Title Ins. Co.* (1963) 217 Cal.App.2d 678, 711 [32 Cal.Rptr. 288].)

recreational vehicle and camping park. In 1972, certain other landowners applied to the Public Utilities Commission (PUC) for a crossing access over the Southern Pacific tracks separating the properties from the Pacific Coast Highway.[2] The Santa Barbara County Road Commissioner informed the PUC by letter that it was probable landowners "were seeking to develop an increased value for their property knowing that agencies of the State of California will be purchasing the property in the near future." The State Department of Parks and Recreation Superintendent wrote the PUC that the subject properties were proposed for acquisition by its department in the "very near future" and that if the crossing application were granted, "the value of the property will be tremendously increased."

In 1974, landowners informed the Department of Parks and Recreation that their lots were available for purchase and were told their property was in the area under consideration for acquisition. April 1978, the state informed the landowners that the Department of Parks and Recreation had been authorized to acquire land for the Gaviota State Park and that a real estate appraisal would be made of their properties.

October 1978, the state offered $70,000 for parcel No. 4156 and $80,000 for No. 4157 which landowners rejected. In 1979, the state offered $170,000 for No. 4156 and $135,000 for No. 4157, also rejected. November 1979, the State of California Public Works Board adopted a resolution authorizing acquisition of the property and a complaint in eminent domain was filed April 3, 1980.

Landowners retained their present attorneys January 1981. Their contingent fee contracts provided 33⅓ percent of any recovery over the offers before employment, or "a reasonable fee" in the event of abandonment by the condemner. Landowners offered to settle for $392,500 for No. 4157 and $410,000 for No. 4156. The state informed them June 1981, that its final offers were $350,000 and $325,000 respectively, and, if unaccepted, would abandon the proceedings. Prior to commencement of trial, set for September 3, 1981, the state abandoned the action by resolution of abandonment July 31, 1981.

Thereafter, landowners moved to compel further answers to interrogatories to answer the question, "In the past 3 years, has the State abandoned ocean front condemnations after lawsuits have been filed?" At the hearing on the motion, landowners' counsel argued that this information was relevant to the issue of whether the state was using the power of eminent domain

---

[2]The applicant for the crossing was another client of landowners' attorneys. Apparently all landowners joined to use the one crossing to obviate multiple applications to the PUC.

recklessly to keep an owner from using or disposing of property until the state could "pick up that property for a bargain price" and that there might be a basis for inverse condemnation or "in fact a basis in this case for setting aside or conditioning the abandonment."

Counsel further stated that if the information sought showed the pattern of conduct they suspected, it might "be a basis for showing oppressive conduct by the State, which indeed would be actionable." After being advised there was no motion filed to set aside the abandonment (Code Civ. Proc., § 1268.510, subd. (b)) and no cause of action for damages pending, the court ruled the information sought irrelevant to the instant proceeding and denied the motion "without prejudice to that issue to be made, that issue being raised in another lawsuit."

September 29, 1981, the trial court entered judgment of dismissal, "defendants not having filed any motion to set aside the abandonment." Subsequently, landowners filed a request for production of documents for "All writings submitted to the State Public Works Board about Agenda Item 100 at its July 31, 1981 meeting" and a memorandum of cost and disbursements in the total amount of $568,331.98.[3] The state filed a motion to tax costs, objecting to fees for appraiser, witnesses, travel messenger service, attorneys, and delay damages.[4]

After taking the matter under submission, the trial court ruled as follows: "The motion to tax costs is granted in part. The allowed costs are as follows:

| | |
|---|---|
| Appraiser | $13,000.00 |
| Expert fees for deposition | 485.00 |
| Deposition transcript | 881.12 |
| Witness fee ($12 and 100 miles at $.20 per mile) | 32.00 |

---

[3]Landowners request we take judicial notice of exhibit A to the memorandum of costs, inadvertently left out of the clerk's transcript, a copy of which was included in appellants' opening brief along with a copy of the original proof of service on respondent. We grant the request. (Evid. Code, § 452.)

[4]The miscellaneous items of cost were as follows:

| | |
|---|---|
| "real estate appraiser | $26,051.80 |
| expert's deposition | 245.00 |
| expert's deposition | 240.00 |
| deposition transcripts | 881.12 |
| witness fees | 309.78 |
| travel | 197.90 |
| photocopy | 3.75 |
| messenger service | 101.63 |
| delay damages | 390,000.00 |
| attorney fees | 150,000.00 |
| Total | $568,331.98" (*Sic.*) |

[should be $568,030.99]

Attorney fees (no amount allowed for activity related 30,000.00
to collection of attorney fees)

TOTAL $44,398.12"

## DISCUSSION

1. *Collection of "Delay Damages" by Cost Bill*

■ Initially, we acknowledge that damages are recoverable in California for unreasonable delay and for other unreasonable precondemnation activities in eminent domain cases. (*Klopping* v. *City of Whittier* (1972) 8 Cal.3d 39 [104 Cal.Rptr. 1, 500 P.2d 1345].) In *Klopping,* the California Supreme Court stated that allowance of recovery under all circumstances for decreases in market value caused by precondemnation announcements might deter public agencies from announcing sufficiently in advance their intention to condemn. (*Id.,* at p. 51.) ■ Nevertheless, the court held, "when the condemner acts unreasonably in issuing precondemnation statements, either by excessively delaying eminent domain action or by other oppressive conduct, our constitutional concern over property rights requires that the owner be compensated. . . . [¶] Accordingly we hold that a condemnee must be provided with an opportunity to demonstrate that (1) the public authority acted improperly either by unreasonably delaying eminent domain action following an announcement of intent to condemn or by other unreasonable conduct prior to condemnation; and (2) as a result of such action the property in question suffered a diminution in market value." (*Id.,* at pp. 51-52, fn. omitted.) Moreover, failure to move to set aside an abandonment does not preclude consideration of the subject. (*Id.,* at p. 55-57.)

■ Damages may be measured by cost of repairs, loss of use of the property, loss of rent or profits, or increased operating expenses pending repairs. (*Tilem* v. *City of Los Angeles* (1983) 142 Cal.App.3d 694, 703 [191 Cal.Rptr. 229].) There are statutory protections from unreasonable delay on the part of the condemner. ■ For example, Code of Civil Procedure section 1245.260, subdivision (a) provides that if a public entity has adopted a resolution of necessity but has not commenced an eminent domain proceeding to acquire the property within six months thereafter, or has commenced such proceeding but has not within six months thereafter, attempted diligently to serve the complaint and the summons, the property owner may, by an action in inverse condemnation, (1) require the public entity to take the property and pay compensation therefor, and/or (2) recover damages from the public entity for any interference with the possession and use of the property resulting from adoption of the resolution. This provision does not, however, affect the owner's right to bring an inverse condemnation action based on article I, section 19, of the California Constitution. (See

Law Rev. Com. Comment to Code Civ. Proc., § 1245.260; *Tilem* v. *City of Los Angeles, supra,* 142 Cal.App.3d 694, 703.) "Thus recovery for loss of rental income after the condemner has excessively delayed bringing an action in eminent domain or has otherwise acted unreasonably is permitted irrespective of whether condemnation proceedings are abandoned or whether they are instituted at all." (*Klopping* v. *City of Whittier, supra,* 8 Cal.3d 39, 57, fn. omitted.)

■■■ Landowners maintain their entitlement to delay damages was created by the abandonment and, until that time, they had no justiciable cause of action for delay damages. Thus, say they, the cost bill was the proper vehicle in which to do so. Not so, responds the state. Code of Civil Procedure section 1268.610 allows the defendant to recover only their "litigation expenses" and that term is specifically defined in Code of Civil Procedure section 1235.140.[5] Therefore, asserts the state, the issue is not whether a property owner should be fully compensated when his property is taken in an eminent domain proceeding but whether the property owner can claim by way of a cost bill "delay damages" when there is no statutory authority to support their position.

■■■ There is no constitutional compulsion to award litigation costs to a landowner in a condemnation proceeding. (*Holtz* v. *San Francisco Bay Area Rapid Transit Dist.* (1976) 17 Cal.3d 648, 658 [131 Cal.Rptr. 646, 552 P.2d 430]; *County of Los Angeles* v. *Ortiz* (1971) 6 Cal.3d 141, 145 [98 Cal.Rptr. 454, 490 P.2d 1142, 68 A.L.R.3d 538].) Allowable costs are a matter of policy, and determination of costs which are permissibly recoverable rests with the Legislature. (*Ibid.*) ■■■ *Klopping* itself made clear that the statutory procedure for recovery of costs and disbursements does

---

[5]Section 1268.610 provides: "(a) Subject to subdivision (b), the court shall award the defendant his litigation expenses whenever: (1) The proceeding is wholly or partly dismissed for any reason; or (2) Final judgment in the proceeding is that the plaintiff cannot acquire property it sought to acquire in the proceeding. [¶] (b) Where there is a partial dismissal or a final judgment that the plaintiff cannot acquire a portion of the property originally sought to be acquired, or a dismissal of one or more plaintiffs pursuant to Section 1260.020, the court shall award the defendant only those litigation expenses, or portion thereof, that would not have been incurred had the property sought to be acquired following the dismissal or judgment been the property originally sought to be acquired. [¶] (c) Litigation expenses under this section shall be claimed in and by a cost bill to be prepared, served, filed, and taxed as in a civil action. If the proceeding is dismissed upon motion of the plaintiff, the cost bill shall be filed within 30 days after notice of entry of judgment."

Section 1235.140 provides that "litigation expenses" includes both of the following: "(a) All expenses reasonably and necessarily incurred in the proceeding in preparing for trial, during trial, and in any subsequent judicial proceedings. [¶] (b) Reasonable attorney's fees, appraisal fees, and fees for the services of other experts where such fees were reasonably and necessarily incurred to protect the defendant's interests in the proceeding in preparing for trial, during trial, and in any subsequent judicial proceedings whether such fees were incurred for services rendered before or after the filing of the complaint."

not bear upon the issue of whether an individual whose property was once singled out for condemnation is able to recover for the type of damages landowners are seeking. (*Klopping* v. *City of Whittier, supra,* 8 Cal.3d 39, 55-56.) Moreover, the constitutional requirement of just compensation applies to both eminent domain and inverse condemnation actions. (*Id.,* at p. 43.) The question is the proper vehicle.

Landowners contend Code of Civil Procedure section 1268.620 provides a mechanism for their damages. That section provides in pertinent part: "If, after the defendant moves from property in compliance with an order or agreement for possession or in reasonable contemplation of its taking by the plaintiff, the proceeding is dismissed with regard to that property for any reason or there is a final judgment that the plaintiff cannot acquire the property, the court shall: [¶] (a) Order the plaintiff to deliver possession of the property to the person entitled to it; and [¶] (b) Make such provision as shall be just for the payment of all damages proximately caused by the proceeding and its dismissal as to that property."

We agree with respondent that the statutory language itself coupled with the Law Revision Commission comment (19A West's Ann. Code Civ. Proc., § 1268.620 (1982 ed.) pp. 181-182) and the cross-reference to section 1255.030 (generally, determination or redetermination of deposit by condemner who desires to take immediate possession) strongly suggest that this section applies only where there has been actual dispossession. ■ Where there is an abandonment following possession by the condemning authority, the defendant may move to retake possession and request damages to be fixed as well as request litigation costs and attorneys fees. (See *County of Madera* v. *Forrester, supra,* 115 Cal.App.3d 57.)

We need not decide here whether the proper vehicle to allege damages for unreasonable precondemnation activity is by separate action for inverse condemnation consolidated for trial with the eminent domain proceedings (see *Tilem* v. *City of Los Angeles, supra,* 142 Cal.App.3d 694) or by answer in the eminent domain proceedings (see *People* ex rel. *Dept. Pub. Wks.* v. *Peninsula Enterprises, Inc.* (1979) 91 Cal.App.3d 332 [153 Cal.Rptr. 895]; *Redevelopment Agency* v. *Contra Costa Theatre, Inc.* (1982) 135 Cal.App.3d 73 [185 Cal.Rptr. 159]). Landowners did neither even though, by their own theory, their loss of use should be compensable whether or not their property value increased over the period of time in question.[6] (Cf. *City of Los Angeles* v. *Lowensohn* (1976) 54 Cal.App.3d 625, 635, fn. 4 [127 Cal.Rptr. 417].) They would have been entitled to a trial on the issue

---

[6]Landowners alleged damages only for the period of 1978-1981 "out of a spirit of compromise" although they contend they are entitled to damages from 1972.

of delay damages had they alleged them and had the state not abandoned before trial. (See *Stone* v. *City of Los Angeles* (1975) 51 Cal.App.3d 987 [124 Cal.Rptr. 822], and Law Revision Commission's comment to Code Civ. Proc., § 426.70 re assertion of related cause of action against plaintiff in eminent domain action.) ■■ Recovery of *Klopping* damages in addition to the fair market value of the property condemned does not result in double recovery for the same loss. (*Stone* v. *City of Los Angeles, supra,* 51 Cal.App.3d 987, 993-994.) How one obtains a trial on delay damages alleged by answer when the condemner abandons before trial is yet unresolved.

In the instant case, review of the trial court proceedings and arguments reveals that landowners are searching desperately for a theory of recovery. Their initial request for discovery concerned other condemnation actions abandoned by the state that *might* show an unreasonable use of the power of eminent domain. Their second requested discovery was aimed at ferreting out information which might show the abandonment itself was in bad faith. ■ Although early acts are admissible to show "unreasonable conduct prior to condemnation" proceedings, the only delay relevant for damages in inverse condemnation is delay after announcement of intention to condemn. (*Jones* v. *City of Los Angeles* (1979) 88 Cal.App.3d 965, 971 [152 Cal.Rptr. 256].) Unusually oppressive conduct results in a determination of 'de facto taking' while delay is answerable in proximately caused damages. (*City of Los Angeles* v. *Property Owners* (1982) 138 Cal.App.3d 114, 119 [187 Cal.Rptr. 667]; *City of Los Angeles* v. *Waller* (1979) 90 Cal.App.3d 766, 778 [154 Cal.Rptr. 12].) What constitutes oppression or direct and substantial impairment of property rights by the condemner, is essentially a factual question, determinable on a case-by-case basis. (*City of Los Angeles* v. *Waller, supra,* at p. 778.)

■■ Nevertheless, it does not follow that the statutory procedure for obtaining litigation expenses was designed to be the vehicle for a full-blown lawsuit with a threshold determination of liability for unreasonable precondemnation conduct to be determined by the court and a right to jury trial on the amount of damages. (See *Redevelopment Agency* v. *Contra Costa Theatre, Inc., supra,* 135 Cal.App.3d 73, 79.) The trial court did not err in disallowing compensation for "delay damages."

## 2. *Reasonable Attorneys' Fees*

■■ Landowners contend the trial court abused its discretion in its "wholly inadequate" attorneys' fee award because it refused to apply a "lodestar multiplier" of four times the "lodestar"—the actual amount calculated by multiplying hours spent by hourly rate. They bolster their argu-

ment with the observation that the landowners, by declaration filed with their opposition to tax costs, agreed that the $150,000 fee sought was reasonable.

Determination of amount of fees and costs is within the sound discretion of the trial court. (*Greater Westchester Homeowners Assn.* v. *City of Los Angeles* (1979) 26 Cal.3d 86, 104 [160 Cal.Rptr. 733, 603 P.2d 1329].) Furthermore, a property owner's own opinion of the value of the attorney services is not necessarily a determining factor. (See *City of Los Angeles* v. *Waller, supra,* 90 Cal.App.3d 766, 780; *Excelsior etc. School Dist.* v. *Lautrup* (1969) 269 Cal.App.2d 434, 443-444 [74 Cal.Rptr. 835].) It is interesting to note that although landowners agreed to reasonable attorneys' fees if the condemnation was abandoned, the fee agreement did not specify use of a "lodestar multiplier." We decline to hold as a matter of law that a trial court, in determining attorneys' fees after abandonment of an eminent domain proceeding, must use a "lodestar multiplier." Federal courts often use this approach in setting attorneys' fees in class action suits where a percentage of recovery or settlement fund is expressly rejected as being arbitrary and inconsistent with both the purpose of awarding attorneys' fees and concerns about awarding excessive fees. (*In re Equity Funding Corp. of America Securities* (C.D.Cal. 1977) 438 F.Supp. 1303, 1326.)

▪ Factors to be weighed in determining reasonableness of application for attorneys' fees are (1) hours spent by attorneys, (2) hourly rate of compensation, (3) risk borne by attorneys, and (4) quality of attorneys' work. (*In re Equity Funding Corp. of America Securities, supra,* at p. 1326.) Additional factors may be the public service element, and motivation to represent consumers and enforce laws. (*Id.,* at p. 1330, fn. 36.) Federal cases disclose the use of multipliers of from one to five times the hourly rate. (*Id.,* at p. 1334.) Here, landowners' counsel used four.

▪ Landowners argue the requested fee is reasonable when compared to what would have been recovered had the state purchased the property in condemnation. However, the trend of California courts as well as courts elsewhere is to regard the existence of a contingent fee contract as either irrelevant or but one factor to be considered when the court determines reasonable attorneys' fees. (See *City of Detroit* v. *Grinnell Corporation* (2d Cir. 1974) 495 F.2d 448, 468; *Vella* v. *Hudgins* (1984) 151 Cal.App.3d 515, 521 [198 Cal.Rptr. 725]; *Glendora Community Redevelopment Agency* v. *Demeter* (1984) 155 Cal.App.3d 465, 472 [202 Cal.Rptr. 389].) Moreover, there is a difference between an award paid by a client and one paid by a public entity. Where the public entity is ultimately responsible for attorneys' fees, the client lacks incentive to keep the fees reasonable since they will neither come out of the client's recovery nor be paid by the client.

Thus, the trial court did not err in disregarding landowners' declarations that $150,000 was a reasonable fee.

We do not mean to infer that a trial court could not award fees in the amount called for by the contingency agreement if, after consideration of factors such as number of hours spent on the case, reasonable hourly compensation for the attorney, novelty and difficulty of the questions involved, skill displayed in presenting them, extent to which the litigation precluded other employment by the attorney, and the contingent nature of the fee award, the court finds the sum reasonable. (See, e.g., *Glendora Community Redevelopment Agency* v. *Demeter, supra,* 155 Cal.App.3d 465.) However, the starting point of every fee award must be a calculation of the attorney's services in terms of time actually expended on the case. (*Serrano* v. *Priest* (1977) 20 Cal.3d 25, 48, fn. 23 [141 Cal.Rptr. 315, 569 P.2d 1303].)

Landowners allege the amount awarded, i.e., $30,000, bears no rational relationship to the amount requested because their declaration of hours times hourly rate was $37,512.50. However, their addition is faulty; the correct total is $21,462.50. It is conceivable, therefore, that the court did consider factors in addition to actual time spent in making its award. Additionally, the court did indicate that it was allowing no amount "for activity related to collection of attorney fees."

 It has been held that when an award of attorneys' fees is statutorily authorized, the *reasonable* expenses of preparing the fee application should be included in the award. (*Brown* v. *Fairleigh Dickinson University* (D.N.J. 1983) 560 F.Supp. 391, 414.) Efforts in opposing a motion to tax costs are recoverable in an abandoned condemnation action. (*Orange County Mun. Water Dist.* v. *Anaheim Union Water Co.* (1967) 247 Cal.App.2d 761, 764 [56 Cal.Rptr. 464].) Here, however, the trial court correctly determined that part of the costs alleged, i.e., delay damages, were improper. Logically, it follows that landowners should not be entitled to attorneys' fees incurred opposing a motion to tax costs which were improperly sought. The trial court has the discretion to determine which services were necessarily incident to the accomplishment of the statutory objectives. (*Decoto School Dist.* v. *M. & S. Tile Co.* (1964) 225 Cal.App.2d 310, 314 [37 Cal.Rptr. 225].) Since we cannot determine how the trial court arrived at the figure of $30,000 and since landowners are entitled to reasonable attorneys' fees for at least part of their efforts in opposing the motion to tax costs, we remand the issue of attorneys' fees to the trial court for clarification or redetermination of litigation costs and advise it set forth the reasons therefor. (*Tilem* v. *City of Los Angeles, supra,* 142 Cal.App.3d 694, 712; *In re Marriage of Cueva* (1978) 86 Cal.App.3d 290, 301 [149

Cal.Rptr. 918].) The trial court should determine the amount of the attorneys' fees sought, whether incurred before or after abandonment, which were reasonable and necessary to protect landowners' interests. (Code Civ. Proc., § 1235.140.)

### 3. *Witness Fees and Trial and Messenger Expenses*

Landowners contend that witness fees (i.e., appraisers), trial and messenger expenses were claimed in a verified cost bill and, thus, were prima facie evidence that the costs were proper. (*Oak Grove School Dist. v. City Title Ins. Co., supra,* 217 Cal.App.2d 678, 699.) The state objected to all these costs in its motion. ▇▇ Where items of cost are properly objected to by plaintiff, the costs are put in issue, and the burden of proof is on defendant to establish those costs. (*Ibid.*) It is not necessary that the plaintiff, as the state did here, accompany the motion to tax cost with any affidavit. (*Ibid.*) Additional oral or written evidence may be submitted when the motion is heard. However, more than a bare objection is needed to rebut the presumption that fees were reasonable and necessarily incurred. (See *Hadley* v. *Krepel* (1985) 167 Cal.App.3d 677 [214 Cal.Rptr. 461].) Nevertheless, if a claim is made for disbursement which on its face appears improper or unnecessary, and the item is properly challenged upon a motion to tax costs, the burden is on the claimant to establish the necessity therefor. (*Oak Grove School Dist., supra,* at p. 699.) ▇▇ We remand this issue to the trial court for clarification and, if necessary, redetermination. Landowners should be given the opportunity to set forth their fees and costs properly incurred in opposing the state's motion.

### 4. *Postabandonment Discovery*

The state deposed landowners' attorneys concerning their memorandum of costs and attorneys' fees. This discovery was proper. (See *Oak Grove School Dist.* v. *City Title Ins. Co., supra,* 217 Cal.App.2d 678, 711-712.) Since we hold herein that landowners could not seek damages for the first time in the cost bill for the state's alleged unreasonable conduct, their requested discovery was irrelevant to the instant proceedings and the court did not err in denying it.

Therefore, we remand the issue of attorneys' fees, witness, messenger and other costs to the trial court for clarification and redetermination, if necessary, and otherwise affirm the order.

Gilbert, J., and Abbe, J., concurred.

A petition for a rehearing was denied December 24, 1985, and appellants' petition for review by the Supreme Court was denied February 13, 1986.