[No. G000412. Fourth Dist., Div. Three. July 31, 1986.]

MARVIN MONTGOMERY et al., Plaintiffs and Appellants, v.
BIO-MED SPECIALTIES, INC., et al., Defendants;
IRVIN UNGAR et al., Interveners and Appellants.

**COUNSEL**

Gayle R. Posner for Plaintiffs and Appellants.

John D. Miller and Franklin J. Brummett for Interveners and Appellants.

**OPINION**

**WALLIN, J.**—Plaintiffs Marvin and Lorene Montgomery filed a complaint against Bio-Med Specialties, Inc. (Bio-Med) and two of its officers for breach of contract in failing to repay a promissory note. Because of a potential conflict of interest between Bio-Med and its officers, two of Bio-Med's principal shareholders, Irvin Ungar, M.D., and Dominic DeCristofaro, M.D., intervened on behalf of Bio-Med to insure a good faith defense of the corporation. After trial, the court found Bio-Med was not liable to the Montgomerys on the note and entered judgment that "plaintiffs take nothing as to Bio-Med and Intervenors." The court further found interveners, being aligned with Bio-Med, were the prevailing parties and awarded them costs of suit.

Thereafter, interveners filed a motion to fix attorney's fees as an item of costs pursuant to the promissory note[1] and Civil Code section 1717,[2] re-

---

[1] The promissory note contained a clause entitling plaintiffs to attorney's fees should they be required to bring suit to enforce payment of the note.

[2] Civil Code section 1717 provides: "(a) In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the prevailing party, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements.

"  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"Reasonable attorney's fees shall be fixed by the court, upon notice and motion by a party, and shall be an element of the costs of suit. . . ."

questing $85,339.22 in attorney's fees. Plaintiffs filed a motion to tax costs on the basis that interveners, as nonsignatories to the promissory note, were not entitled to attorney's fees. The court found "that under the circumstances . . . Intervenors step into the shoes of defendant Bio-Med and are qualified to receive fees under section 1717 of the Civil Code." It then awarded interveners $44,000 in attorney's fees.

Plaintiffs appeal from the order awarding attorney's fees and interveners cross-appeal contending the award itself is insufficient.

I

The Montgomerys renew their argument made below: Interveners, as nonsignatories to the promissory note, are not entitled to attorney's fees. In *Reynolds Metals Co.* v. *Alperson* (1979) 25 Cal.3d 124 [158 Cal.Rptr. 1, 599 P.2d 83], our Supreme Court interpreted Civil Code section 1717[3] to "provide a reciprocal remedy for a nonsignatory defendant, sued on a contract as if he were a party to it, when a plaintiff would clearly be entitled to attorney's fees should he prevail in enforcing the contractual obligation against the defendant." (*Id.,* at p. 128.) Plaintiffs seek to escape the rule of *Reynolds* by arguing there the nonsignatory was alleged at trial to be the alter ego of the signatory, and hence, the court properly found he was sued as though a party to the contract. A similar conclusion does not follow here, plaintiffs argue, because although Bio-Med was a signatory to the promissory note, and Ungar and DeCristofaro intervened on its behalf, they were never alleged to be the alter egos of the corporation. Plaintiffs contend absent this critical allegation of alter ego, interveners were not "sued as though a party to the contract."

We disagree that failure to allege an alter ego relationship is fatal to the application of section 1717. In order to protect the interests of the defendant corporation directly and their own interests as principal shareholders indirectly, Ungar and DeCristofaro were forced to intervene on behalf of Bio-Med, which included defending against a claim to attorney's fees pursuant to the note. Two years ago, in *Manier* v. *Anaheim Business Center Co.* (1984) 161 Cal.App.3d 503 [207 Cal.Rptr. 508], we held the relevant consideration in awarding attorney's fees under section 1717 to be whether the plaintiff has forced the defendant to wage a defense against liability for attorney's fees.

Moreover, it would be clearly inequitable to deny interveners the reciprocal remedy of section 1717 because of plaintiffs' failure to allege an alter ego

---

[3]All further references are to the Civil Code unless otherwise specified.

relationship; interveners made repeated offers to withdraw from the litigation if plaintiffs would forego any post judgment attempts to hold them liable on that very theory. Plaintiffs cannot escape the two-edged sword of section 1717 by waiting until they have secured a victory against the signatory defendant to assert it against the nonsignatory.

Furthermore, although we said in *Manier* that the right to attorney's fees is determined not by the evidence adduced at trial, but by the pleadings, the lack of an alter ego allegation here does not defeat interveners' right to attorney's fees.   ██ ██   "The purpose of allowing intervention is to protect others potentially affected by a judgment, thus obviating delay and multiplicity of suits. [Citations.] The intervener becomes a party to the action, with all of the same procedural rights and remedies of the original parties. [Citations.] [¶] Interveners have been held liable for costs incurred after they joined the litigation when judgment has been entered against them." (*Catello* v. *I.T.T. General Controls* (1984) 152 Cal.App.3d 1009, 1013-1014 [200 Cal.Rptr. 4].) Since plaintiffs would have been entitled to receive attorney's fees from interveners had plaintiffs prevailed against Bio-Med, interveners are entitled to recover their fees incurred in successfully defending against that claim.

## II

Interveners cross-appeal from the order fixing attorney's fees at $44,000 contending it is inadequate and the court committed reversible error in failing to state its method of arriving at the award.

After trial, interveners submitted a memorandum of costs and disbursements claiming $82,773.50 in attorney's fees. Attached to the memorandum were declarations and itemized statements reflecting a total of approximately 830 hours of work on the case. Plaintiffs then filed a motion to tax costs, challenging interveners' right to attorney's fees solely on the basis that as nonsignatories to the contract, they were not permitted under section 1717 to recover attorney's fees.

The matter was taken under submission and by minute order the court ruled, "Plaintiff's motion to tax costs is denied. Court finds $44,000.00 as reasonable attorney fees necessarily incurred by Intervenors to defend Bio-Med. Court finds that under the circumstances found here, Intervenors step into the shoes of defendant, Bio-Med and are qualified to receive fees under Section 1717 of the Civil Code . . . ."

██   Relying on *Serrano* v. *Priest* (1977) 20 Cal.3d 25 [141 Cal.Rptr. 315, 569 P.2d 1303] (*Serrano III*), interveners contend the court's failure

to state its method of arriving at the award of attorney's fees was reversible error. In *Serrano III*, our Supreme Court set forth the guidelines to be followed in awarding attorney's fees under the private attorney general doctrine codified in section 1021.5 of the Code of Civil Procedure. *Serrano III* requires the court to first determine a "touchstone" figure based on a compilation of time spent and reasonable hourly compensation for each attorney involved in presentation of the case. (*Id.*, at p. 48.) That figure may then be increased or reduced by the application of a multiplier after the court has taken into consideration other factors concerning the lawsuit. (*Press* v. *Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 321-324 [193 Cal.Rptr. 900, 667 P.2d 704].)

*Serrano III* and its progeny represent somewhat of a deviation from the general rule allowing the trial court wide latitude in determining the amount of an award of attorney's fees. The fee award in *Serrano III* is designed to foster a particular kind of socially beneficial litigation (*Bauguess* v. *Paine* (1978) 22 Cal.3d 626, 636 [150 Cal.Rptr. 461, 586 P.2d 942]) and utilization of a specific method is deemed necessary to protect the public entity ultimately responsible for attorney's fees in public interest lawsuits. (*State of California* v. *Meyer* (1985) 174 Cal.App.3d 1061, 1073 [220 Cal.Rptr. 884].) However, application of the "touchstone" concept to attorney fee awards outside the context of public interest litigation was flatly rejected by *Fed-Mart Corp.* v. *Pell Enterprises, Inc.* (1980) 111 Cal.App.3d 215 [168 Cal.Rptr. 525]. "Both *Serrano III, supra,* and *Mandel* v. *Lackner* [(1979) 92 Cal.App.3d 747 (155 Cal.Rptr. 269)], involved compensation for lawyers in public interest litigation where the prevailing parties were essentially 'involuntary clients.' To require as starting point in every fee award matter a careful compilation of the time spent—where the 'client' may be a large amorphous body of persons having no direct relation to no choice in the choosing of the lawyer serving in the common litigation—is most necessary. It is 'obviously vital to the prestige of the bar and the courts.' [Citation.] Such a rigid requirement, however, is not equally 'vital' when such precipitating facts are not present. [¶] Furthermore, there is no indication *Serrano III* intended to change long standing California decisions setting forth the principle under which attorney fees are to be set by a court in statutory and contractual settings." (*Id.*, at p. 225.)

■ Thus, having determined that *Serrano III* has not changed our standard of review, our search is for a "manifest abuse of discretion." (*Hadley* v. *Krepel* (1985) 167 Cal.App.3d 677, 682 [214 Cal.Rptr. 461].) Interveners provided the court below with extensive and detailed documentation of the nature of the services rendered and the hours spent in that regard. And although the number of hours spent is certainly a factor to be considered by the trial judge, it is not dispositive of the fee award. (*Fed-Mart Corp.*

v. *Pell Enterprises, Inc., supra,* 111 Cal.App.3d 215, 225.) Other factors, such as nature of the litigation, amount involved, skill required and experience of counsel are also relevant. (*Ibid.*) "The 'experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.'" (*Serrano v. Priest, supra,* 20 Cal.3d at p. 49.)

We cannot find an abuse of discretion in the trial court's determination that $44,000 was a reasonable fee to defend an action to enforce payment of a $150,000 promissory note.[4]

The judgment is affirmed. Interveners Ungar and DeCristofaro are entitled under section 1717 to recover attorney's fees incurred in defending against the Montgomerys' appeal. The matter is remanded to the trial court for the limited purpose of determining the reasonable value of those fees. Each party to bear its own costs on appeal.

Trotter, P. J., and Sonenshine, J., concurred.

The petition of plaintiffs and appellants for review by the Supreme Court was denied November 13, 1986.

---

[4]Interveners also argue the court erred in failing to follow California Rules of Court, rule 232.5, which requires a trial court to announce a tentative decision on a factual issue raised prior to the trial of other issues; however, rule 232.5, by its language, does not apply to postjudgment proceedings.