[No. A040245. First Dist., Div. Five. July 27, 1988.]

CITY OF OAKLAND, Plaintiff and Appellant, v.
OAKLAND RAIDERS et al., Defendants and Respondents.

COUNSEL

David A. Self, Self & Dang, Laurence P. Horan, Horan, Lloyd, Karachale & Dyer, Michael W. Stamp, and Jayne Williams, City Attorney, for Plaintiff and Appellant.

Richard Haas, John E. Munter, Lasky, Haas, Cohler & Munter, Joseph L. Alioto and Alioto & Alioto for Defendants and Respondents.

OPINION

KING, J.— In this case we hold that in determining the amount of reasonable attorney fees in an eminent domain action, the trial court was not restricted to multiplying the number of hours of professional legal services rendered by the hourly rates charged by top law firms. The court, in exercising its discretion, could consider additional factors including the unusual character and difficulty of the litigation, the result achieved, the urgent time demands required by the litigation, its critical importance to the prevailing party and the financial burden of delay between incurring the fees and the court's order fixing the amount and ordering payment.

The City of Oakland (City) appeals from an order requiring the City to pay the Oakland Raiders' litigation expenses after the Raiders successfully opposed the City's eminent domain action. We affirm.

The history of this litigation is well known. The City commenced proceedings in 1980 to acquire by eminent domain the property of the Raiders, a National Football League franchise. The Alameda County Superior Court issued a preliminary injunction prohibiting transfer of the franchise from Oakland. The case was transferred to Monterey County, where the superior court rendered summary judgment for the Raiders. The Supreme Court reversed, holding the eminent domain statutes permitted condemnation of intangible property and the City had a right to show whether the attempted exercise of eminent domain would be a valid public use. (*City of Oakland* v. *Oakland Raiders* (1982) 32 Cal.3d 60 [183 Cal.Rptr. 673, 646 P.2d 835, 30 A.L.R.4th 1208] [*Raiders I*].)

At this point the Raiders had been playing their home games in Los Angeles. The City applied for reinstatement of the preliminary injunction against transfer of the franchise from Oakland, and Division Four of this court granted a peremptory writ of mandate directing the superior court to hold a hearing on the application. (*City of Oakland* v. *Superior Court* (1982)

136 Cal.App.3d 565 [186 Cal.Rptr. 326] [*Raiders II*].) In early 1983 the superior court reinstated and modified the injunction, ordering that all Raiders home games for the 1983 season would be played in Oakland unless the Raiders obtained a favorable judgment before the beginning of the season.

After trial in May 1983 the court rendered judgment for the Raiders. However, Division Four of this court issued a writ of mandate ordering the superior court to vacate the judgment and determine objections to the eminent domain action on which the court had not previously ruled. (*City of Oakland* v. *Superior Court* (1983) 150 Cal.App.3d 267 [197 Cal.Rptr. 729] [*Raiders III*].) On remand the court again rendered judgment for the Raiders, in August 1984. Division Four affirmed the judgment on the ground the City's proposed exercise of eminent domain power would violate the commerce clause of the United States Constitution. (*City of Oakland* v. *Oakland Raiders* (1985) 174 Cal.App.3d 414 [220 Cal.Rptr. 153] [*Raiders IV*].)

The present appeal in this seemingly endless cycle of litigation—*Raiders V*[1]—challenges the costs award arising from the 1984 judgment for the Raiders. Under eminent domain law the Raiders, as prevailing parties on the ultimate issue of acquisition by the City, were entitled to recover their litigation expenses, including "reasonable" attorney fees. (Code Civ. Proc., §§ 1235.140, 1268.610.) The Raiders filed a costs memorandum shortly after rendition of the 1984 judgment. They filed an amended and supplemental costs memorandum in September 1986, specifying attorney fees of $5 million for "the entire litigation from commencement and to date in all courts, superior and appellate." The City opposed the amended and supplemental costs memorandum and moved to tax costs.

At the hearing on litigation expenses the Raiders' lead counsel, Moses Lasky, testified that the only agreement with the Raiders as to attorney fees was an oral understanding that counsel would be paid for the "reasonable value of the services."[2] The Raiders had paid a $100,000 retainer in 1980 and nothing thereafter. Lasky said the fee was not contingent upon success, although "[i]f I had lost there would have been a bill which would have taken into cognizance the fact that I had not been successful." Lasky

---

[1] Despite the Raiders' having achieved one of professional football's greatest winning records while located in Oakland, the City of Oakland has now brought the Raiders to the appellate courts of California more often than the Raiders took the City of Oakland to the Super Bowl. It does appear that the "season" for this litigation is about to end. Hopefully, the Roman numerals in this litigation will not eventually overtake those designating the Super Bowl games.

[2] Similarly, the Raiders' managing partner, Al Davis, testified that the Raiders were to pay "a fee which represented the reasonable value of the services rendered."

expressed the opinion that $5 million was "reasonable compensation" for the legal services provided to the Raiders. He supplied a written summary of attorney and staff hours devoted to the litigation. He indicated, however, that his office did not charge on an hourly basis, but assessed fees according to "service and accomplishment," using hourly rates (except for himself) as "guidelines" and as "a starting point."

The City presented testimony by two experienced large-firm litigators, Lewis Fenton and David Balabanian, as to the reasonable value of the Raiders' legal services.

Fenton estimated reasonable attorney fees in two components. The first was based on hourly rates that would have been charged by Northern California law firms that were competent to manage a large lawsuit of this sort. These rates multiplied by the amount of hours devoted to the case yielded the sum of $854,400. The second component took into account several factors not included in the first component, including the unusual difficulty of the litigation, its critical importance to the Raiders, the urgent time demands placed upon the Raiders' lawyers, and the financial burden of the delay between the incurring of the fees and an order of payment by the court. Fenton testified the second component reflected his judgment that the legal expertise required by this litigation "would not be adequately compensated [by] providing only a reasonable or top hourly return on the time in fact spent." Fenton assigned this component a value of "as high as" $500,000, an amount he characterized as "perhaps arbitrarily arrived at." Thus his total estimate of reasonable attorney fees was as much as $1,354,400.

Balabanian estimated reasonable attorneys fees as $848,633, calculated by multiplying the amount of hours devoted to the case by top hourly rates. Unlike Fenton, Balabanian did not add a second component to his estimate.

The trial court fixed $2 million as reasonable attorney fees from the inception of the case in 1980 through the date of the 1984 judgment. In a written opinion the court explained its reasoning. First, the court determined "a component" of attorney fees by multiplying the amount of hours devoted to the case by "hourly rates similar to those charged by top law firms in the Bay Area for the various levels of legal services performed in this case." This calculation yielded the sum of $853,756, which the court characterized as a "starting point."[3] The court then raised the fees to $2 million to account for the following factors: the extraordinary novelty and

---

[3] The minor variance between the court's hourly rate total and those of Fenton and Balabanian is apparently due to the fact that the court relied on actual time sheets, while Fenton and Balabanian relied on summaries that deviated slightly from the time sheets.

complexity of the issues presented, the need for the Raiders' counsel to act quickly throughout the litigation, the deferral of payment of counsel's fees, and most significantly the critical importance of the litigation to the Raiders and the result obtained.

The court rendered an order awarding the Raiders $2 million in attorney fees and $200,675 for costs and disbursements incurred through the date of the 1984 judgment with interest from that date, plus an additional $100,000 for legal services rendered and $4,442 for costs and disbursements incurred after the 1984 judgment with interest from the date of the court's written opinion. The total amount awarded, with interest as of the date of the court's written opinion, was $2,885,735.

The City's primary contention on appeal is that the trial court lacked authority to award *any* attorney fees exceeding $853,756, the sum of hours devoted to the case multiplied by hourly rates charged by top Bay Area law firms.

This argument is groundless. ■ It is well settled that the judicial determination of "reasonable" attorney fees in an eminent domain action does not depend solely upon hourly rates and the number of hours devoted to the case. While these two factors are "the starting point of every fee award" (*State of California* v. *Meyer* (1985) 174 Cal.App.3d 1061, 1074 [220 Cal.Rptr. 884]), numerous other factors must also be considered, including the novelty and difficulty of the issues presented, the quality of counsel's services, the time limitations imposed by the litigation, the amount at stake, and the result obtained by counsel. (*La Mesa-Spring Valley School Dist.* v. *Otsuka* (1962) 57 Cal.2d 309, 316 [19 Cal.Rptr. 479, 369 P.2d 7]; *State of California* v. *Meyer, supra,* 174 Cal.App.3d at pp. 1073-1074; *Glendora Community Redevelopment Agency* v. *Demeter* (1984) 155 Cal.App.3d 465, 474 [202 Cal.Rptr. 389].)

■ Thus, in *Salton Bay Marina, Inc.* v. *Imperial Irrigation Dist.* (1985) 172 Cal.App.3d 914, 957-958 [218 Cal.Rptr. 839], which reversed a contingency fee award in an inverse condemnation action and remanded for redetermination of attorney fees, the court said that on remand the trial court "should begin its analysis with a calculation of the attorney services in terms of time the attorneys actually expended on the case," and "should then examine" all of the other pertinent factors. That is precisely what the trial court did in the present case.

The City's argument is startling in light of the testimony of its own expert witness, Lewis Fenton, who testified that an hourly fee calculation alone would not adequately compensate the Raiders' counsel. Fenton did exactly

what the City is challenging on appeal: he added a component to the hourly fee calculation to account for other pertinent factors as prescribed by *La Mesa-Spring, Meyer, Glendora* and *Salton Bay.* The trial court cannot be faulted for following the course urged by the City's own witness and supported by prior decisions. Fenton's testimony supported the court's determination that an hourly fee calculation would not yield a reasonable fee, so that it was necessary to increase the award in light of factors other than actual time spent and hourly rates.

The City characterizes the enhanced award as the product of a "multiplier," and cites *Meyer* for the proposition that multipliers cannot be used in eminent domain actions absent contractual authorization. This argument is flawed for two reasons. First, in no way did the court characterize the increase as the product of a multiplier; rather, the court tied the increase directly to factors properly considered in determining reasonable attorney fees. Second, *Meyer* did not disapprove the use of multipliers in eminent domain cases, but simply declined to hold as a matter of law that the courts *must* use multipliers. (174 Cal.App.3d at p. 1061.)[4] The City's reliance on *Meyer* is curious indeed, for that case directly supports the present fee award. The court in *Meyer* characterized actual time spent as a "starting point," described other factors that must also be considered, and noted "[i]t is conceivable . . . that the court did consider factors in addition to actual time spent in making its award." (174 Cal.App.3d at p. 1074.)

The City contends the $853,756 component of the award already included the factors the court relied upon in increasing the award. Again, this argument is contradicted by the City's own expert, Lewis Fenton, who testified that his estimate for this component did *not* take into account any factors other than time actually spent and hourly rates. Fenton found it necessary to increase the award by as much as $500,000 to account for factors upon which the court relied in assessing the increase. There was no overlapping of factors among the two components of the award.[5]

---

[4] The City also cites *Florida Rock Industries, Inc.* v. *United States* (1985) 9 Cl.Ct. 285 as an opinion disapproving the use of a multiplier in an inverse condemnation action. In that case, however, attorney and client had agreed as to the time to be spent and the rates to be charged, so that use of a multiplier would have resulted in an award exceeding the actual fees incurred. No analogy can be drawn to the present case. Here there was no agreement between attorney and client other than that a "reasonable" fee would be paid. Thus the assessment of reasonable fees in an amount greater than the hourly rate component did not exceed actual fees incurred.

[5] The City cites *Pennsylvania* v. *Delaware Valley Citizens' Council* (1986) 478 U.S. 546, 566 [92 L.Ed.2d 439, 457, 106 S.Ct. 3088, 3098], which stated that an hourly rate calculation of reasonable attorney fees "includes most, if not all, of the relevant factors comprising a 'reasonable' attorney's fee." The law of eminent domain in California, however, is somewhat at variance, mandating the consideration of numerous factors other than time spent and hourly rates. (*La Mesa-Spring Valley School Dist.* v. *Otsuka, supra,* 57 Cal.2d 309; *State of California*

The City also argues the court erred in citing the deferral of fee payment as a basis for the increase because the award of interest accounted for the delay. However, interest on the $2 million award began to accrue only after the date of the 1984 judgment. Except for the $100,000 retainer, the Raiders' counsel received no payments since the beginning of the litigation in 1980. Thus the delay in payment from 1980 to 1984 was a proper basis for the increase.

In short, the court was authorized to award attorney fees in excess of the hourly rate calculation, and its decision to do so was supported by the testimony of the City's own expert witness. The decision to increase the award above $853,756 is unassailable.

The City claimed for the first time at oral argument that the court abused its discretion in determining the *amount* of the increase over $853,756. We find no abuse. ■ The amount to be awarded as attorney fees is left to the sound discretion of the trial judge, who is in the best position to evaluate the services rendered, and the court's decision will not be disturbed on appeal unless it is clearly wrong. (*Glendora Community Redevelopment Agency* v. *Demeter, supra,* 155 Cal.App.3d at p. 474; see also *State of California* v. *Meyer, supra,* 174 Cal.App.3d at p. 1073.) ■ Given the trial judge's intimate familiarity with this extremely complex and notorious litigation and the fact the $1,146,244 increase was not grossly disproportionate to Fenton's admittedly arbitrary $500,000 increase, we cannot characterize the trial court's decision as clearly wrong.

The Raiders request an award of their attorney fees for the present appeal. They are entitled to such an award. Litigation expenses recoverable in eminent domain proceedings include reasonable attorney fees incurred during trial "and in any subsequent judicial proceedings." (Code Civ. Proc., § 1235.140, subd. (b); cf. *Serrano* v. *Unruh* (1982) 32 Cal.3d 621, 637 [186 Cal.Rptr. 754, 652 P.2d 985] [authorizing recovery of appellate fees for defending fee awarded under Code Civ. Proc. § 1021.5].)

The Raiders also ask us to determine the amount of the award. We decline to do so. First, the Raiders have requested no specific amount and have not provided the "starting point" of a summary of hours spent on the appeal and appropriate hourly rates. Second, in postappeal proceedings the trial court will determine the Raiders' recovery of appellate costs, and judicial economy favors the determination of attorney fees and costs in a

v. *Meyer, supra,* 174 Cal.App.3d 1061; *Glendora Community Redevelopment Agency* v. *Demeter, supra,* 155 Cal.App.3d 465.) In any event Fenton testified that his hourly rate calculation, upon which the trial court relied, did not include consideration of four crucial factors cited by the trial court in increasing the award.

single proceeding. We shall therefore award appellate attorney fees to the Raiders but direct the trial court to determine the amount of those fees.

The order is affirmed. The Raiders are awarded their appellate attorney fees and costs. The superior court is directed to determine the amount of the award.

Low, P. J., and Haning, J., concurred.