Filed 10/27/21  Korff v. Goodrich CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| NANCY KORFF, Petitioner and Respondent, v. DONNA GOODRICH, Appellant. | A160917 (Solano County Super. Ct. No. FPR046395) |

Appellant Donna Goodrich and respondent Nancy Korff settled a will contest filed by Goodrich, the daughter of the decedent David Bentley, under which Goodrich and Korff would receive assets of roughly equivalent value. The settlement agreement had an attorney fee provision.  Korff thereafter took positions inconsistent with the settlement, positions resolved against her by rulings of the probate court.  Korff separately appealed three of those rulings.  We consolidated the appeals, and in an unpublished opinion affirmed the rulings, easily rejecting Korff's arguments.  Indeed, we granted Goodrich's motion for sanctions, and awarded sanctions against Korff and her attorney, jointly and severally, for taking a frivolous appeal, awarding a total on $91,084—$49,875 of which was for the work of her attorney Gerald Clausen, the amount, he testified, required to defend against the appeals.

1

Following remand, based on the settlement agreement, Goodrich sought in probate court over $103,000 in additional fees for the work of Clausen on the appeals, seeking a significantly higher hourly rate than that sought in the sanctions motion and claiming substantially more hours spent. Following two rounds of briefing and a lengthy hearing, the trial court filed a comprehensive and thoughtful twelve-page order denying the additional fees, concluding in part that the "equities are against Goodrich." We affirm.

## BACKGROUND

As noted, we had an earlier appeal in this matter, in connection with which we filed a 47-page unpublished opinion that contained an exhaustive discussion of the background of this dispute, most of which is not relevant to the issue here. But some of it is, to set the scene for this appeal, and we quote from the opinion as appropriate, taking judicial notice of it on our own motion. (Evid. Code, §§ 452, 459.) Thus:

"David Bentley died on January 23, 2014, leaving an estate whose primary assets included a house on Beelard Drive in Vacaville (Beelard Drive house), 12 vehicles, over $387,000 in eight separate financial accounts, and a $17,000 promissory note that was in arrears, for a total estate of just over $700,000. A month after Bentley's death, Nancy Korff, Bentley's caregiver, filed a petition to probate his will—a holographic will he executed two months before his death that named Korff as the sole beneficiary. The next month, Donna Goodrich, Bentley's daughter, filed a will contest and objection to probate of the will, alleging undue influence, duress, fraud, and mistake. Korff denied the allegations and contended the will accurately reflected Bentley's intent to disinherit his daughter.

2

"Because Goodrich also objected to Korff administering Bentley's estate, in August 2014, the probate court appointed respondent Thomas Kiernan as an independent administrator.

"As was seemingly insignificant at the time but would become an issue two and a half years later, on October 22, 2014, counsel for Goodrich emailed counsel for Kiernan inquiring about the status of one of Bentley's eight financial accounts. He advised that Goodrich had received a bank statement indicating that a $73,730.55 check was posted to the account, leaving a balance of $2.83, and sought confirmation that Kiernan had withdrawn the funds. Kiernan's attorney confirmed that Kiernan had posted a check on Bank of the West (BOTW) account #7367 in the amount indicated. Korff's attorney also received the emails. [¶] . . . [¶]

"On March 27, Kiernan filed a partial inventory and appraisal (I&A). It listed five of Bentley's eight financial accounts by institution name, account number, and date-of-death balance. Two months later, Kiernan filed a final I&A. The final I&A identified Bentley's three other accounts, including BOTW account #7367, again by institution name, account number, and date-of-death balance. The final I&A also listed the Beelard Drive house, valued at $230,000, and the 12 vehicles. As indicated by the partial and final I&As, which Goodrich and Korff both received, the balance of Bentley's financial accounts on the date of his death was $387,026.92.

"Korff and Goodrich ultimately mediated the will contest, participating in a third mediation session on January 11, 2016 that resulted in a settlement. Present at the mediation was mediator Edward J. Corey, Jr., Goodrich and her attorneys Edward Nevin and Roger Wintle, and Korff and her attorney Joseph Canning. Neither Kiernan nor his attorney Betty Homer was present, although they were available by telephone.

3

"In the hours preceding the settlement, the parties received from attorney Homer an asset inventory prepared by Kiernan. In addition to the Beelard Drive house (with a listed value of $230,000), the 12 vehicles, and miscellaneous household goods, the inventory identified only two bank accounts, neither of which was one of the eight accounts that existed on the date of Bentley's death. Both were BOTW accounts, one a checking account with a balance of $12,235.37 (#1746), the other a money market fund with a balance of $344,018.08 (#4398), for a total of $356,253.45 in cash assets."

Korff and Goodrich memorialized the settlement in a written "Settlement Agreement and Mutual Release" (settlement agreement) signed by them and their attorneys. The distributive clause of the settlement agreement contained three subparagraphs that divided the estate's assets between Korff and Goodrich this way: Korff would receive the Beelard Drive house, 12 specifically identified vehicles and motorcycles, and "remaining personal property" not specifically to go to Goodrich; Goodrich would receive eight specifically listed estate accounts, a promissory note (to the extent she "wishes to receive it"), and "to the extent these items are still in existence," four items of personal property.

The settlement agreement also governed the fees for the administration of Bentley's estate, providing that fees "shall be paid one-half by [Goodrich] and one-half by [Korff], except [Korff's] 50 percent shall not exceed a total of $20,000. Therefore to the extent that the total statutory fees, extraordinary fees, and administrator fees exceed $40,000, [Goodrich] shall be responsible for all fees and costs in excess of this amount." Finally, as relevant here, the settlement agreement had this attorney fee provision: "In the event that any party to this Agreement files any petition or institutes litigation to enforce the terms of this Agreement, the Parties expressly agree that the prevailing

4

party or Parties, in addition to any other relief provided by law, will be entitled to such reasonable attorneys' fees and court costs as may be incurred."

Various petitions were thereafter filed in the probate court, beginning with Korff's petition for preliminary distribution. This generated objections by Goodrich and a response by Kiernan, ultimately leading to the probate court ruling that Kiernan provide an accounting. We quote from our opinion as to what happened next.

"On December 28, Kiernan filed a 'First and Final Account and Report of Administrator, and Petition for Approval Thereof and Petition for Final Distribution, Allowance of Compensation to Administrator and Attorneys for Statutory and Extraordinary Services' (petition for final distribution). The petition informed the court that while Goodrich, who was 'waiting to receive the entirety of her distribution under the terms of the settlement agreement,' waived her right to an accounting, Korff, who had received her distribution 'in full,' would not, thereby necessitating the accounting.

"As to the estate assets, Kiernan's accounting showed that the estate had assets of $370,980.91, comprised of the promissory note and BOTW accounts #1746 and #4398. Kiernan requested statutory and extraordinary fees for him and his attorney in the amount of $62,908.11 and authority to reserve $10,000 for closing expenses and additional liabilities, which amounts he proposed deducting from the assets on hand. This would leave a cash balance of $298,072.80, which he proposed distributing to Goodrich.

"On February 21, 2017, Kiernan's petition for final distribution came on for hearing. The court granted his request for statutory compensation for him and his attorney and extraordinary compensation for him. It denied his attorney's request for certain extraordinary fees and continued the request

5

for other extraordinary fees to allow counsel an opportunity to provide additional supporting information. At the hearing, Canning advised that Korff intended to hire separate counsel to review the accounting and that she intended to object to it."

Attorney Thomas Tagliarini entered the picture representing Korff, and thus began a series of pleadings that we would go on to describe for over 14 pages in our opinion, which description began with this: "On April 14, Korff, now represented by attorney Thomas Tagliarini, filed a verified objection, followed by a verified amended objection, to Kiernan's petition for final distribution. Her primary objection was to the distribution of the funds in BOTW accounts #1746 and #4398 to Goodrich. For the first time— 15 months after the settlement—Korff claimed that under the terms of the settlement agreement, *she*, not Goodrich, was entitled to the funds in those accounts. She asserted that the settlement agreement allocated only the eight original accounts to Goodrich, and since BOTW accounts #1746 and #4398 were not allocated to Goodrich, they were in fact allocated to her under the residuary clause in the settlement agreement." This, we said, was a "novel theory—a theory, we might add, absolutely contradicted by the representations both Korff and attorney Canning previously made to the court."

What followed were months of pleadings, including declarations from Korff, and various briefs on her behalf filed by Tagliarini, asserting a position on behalf of Korff utterly inconsistent with the settlement. The trial court would describe Korff's position as "absurd." We would come to describe it as "manifestly unreasonable on its face," going on with this elaboration:

"As the probate court found, Korff's position is indeed absurd. She asks us to believe that after three mediation sessions—described by Goodrich's

6

attorney as 'long, drawn-out mediation sessions that cost a lot of money for attorneys, mediators'—the parties agreed Goodrich would receive only a long past due promissory note and whatever remained in the original eight accounts that she purportedly knew might no longer exist, and she would additionally be responsible for half of the first $40,000 in estate costs and all costs beyond that, while Korff on the other hand would receive the Beelard Drive house, the 12 vehicles, all other tangible personal property save a print, a portrait, and costume jewelry, *and* the cash accounts valued at over $350,000. In other words, Korff would receive virtually the entire estate, while Goodrich would essentially receive nothing other than a few tangible items and would be liable for tens of thousands of dollars in costs. This interpretation is nothing short of preposterous."

In any event, following months of pleadings, the court heard various issues on November 15, 2018, where, among other things, the court denied Korff's objections to distribution of the cash assets to Goodrich, giving a 15-paragraph explanation of why. Korff, represented by Tagliarini, filed her first appeal, and within months, two other appeals. We ordered the appeals consolidated, and on October 2, 2019, filed our unpublished opinion affirming all three rulings.

**The Motion for Sanctions**

In connection with the appeals, Goodrich filed a motion for sanctions against Korff and her attorney Tagliarini, a motion we described in our opinion as follows: "On May 23, 2019, Goodrich filed a motion seeking sanctions against Korff and her attorney, Thomas Tagliarini, for their filing and pursuit of the appeals. The motion asserted that the second and third appeals are frivolous 'in their entirety,' and that all the issues raised in the first appeal are frivolous 'with the possible exception of the issue concerning

7

the appropriate distribution of certain refunds.'  Because, as noted, Korff's liability for Kiernan's fees are capped at $20,000, Goodrich requests sanctions sufficient to reimburse both her and Kiernan for attorney fees and costs incurred in defending against the appeals, specifically, $49,875 for herself, which includes fees incurred in preparing the respondent's brief and the motion for sanctions, and $41,209 for Kiernan.  The motion is supported by declarations of Goodrich's attorney Gerald Clausen and the estate's attorney Betty Homer, both of whom testified in detail regarding the fees incurred."

The specific reference in the sanctions motion pertaining to the work by Clausen made the following representations:  "The attorney fees on appeal incurred by Ms. Goodrich (including the fees to date for this motion for sanctions) are shown in Tables 1 and 2.  (See Clausen Dec. ¶ 6.)"  Table 1 represented that Clausen spent 110 hours on the appeal and Table 2 that he spent 32.5 hours on the motion for sanctions.  And in the referenced paragraph in the declaration, Clausen testified as follows:  "Tables 1 and 2 accurately reflect the time I spent on the activities specified in those tables. I calculated the values in Tables 1 and 2 by consulting my time records and toting up the hours for each category of activity set forth in the tables."

We agreed with Goodrich, and in a comprehensive eight-page analysis held that "Korff's appeal was objectively unreasonable.  It was frivolous.  And Korff should be sanctioned for it.  So should Tagliarini."  And we concluded as follows:  "As noted, Goodrich's counsel filed a declaration supporting attorney fees of $49,875, and the declaration from Kiernan's counsel supports $41,209 expended on his behalf.  Tagliarini's letter says nothing about the amounts sought, they are well supported, and it is hard to imagine a greater 'degree of objective frivolousness.'  We thus assess sanctions in those amounts, assessed jointly and severally against Korff and Tagliarini, her attorney.  [Citation.]"

8

**Goodrich's New Request for Attorney Fees**

Following remand, in January 2020, Goodrich filed in the probate court a motion for attorney fees. It was accompanied by an eight-page memorandum of points and authorities, a declaration of attorney Clausen, a request for judicial notice, and the declaration of expert witness Mark Thomas. The motion was based of Civil Code section 1717[1] and sought an award of "fees for services rendered by her attorneys in connection with appeals from judgments and orders rendered in this action." Specifically, the motion sought fees for the work of three attorneys, Clausen, Nevin, and Wintle.

As to Clausen, the issue here, the motion asserted a reasonable hourly rate for his services was $675, and that he "spent a total of 209.4 hours in defending against the appeal"—numbers, as noted, significantly inflated over those represented to this court in connection with the sanctions request. Based on those numbers, plus an additional 18.2 hours in preparing the motion, the motion sought a total of $103,755 for the work of Clausen: $153,630 (227.6 hours × $675 an hour) reduced by the $49,875 awarded by us.

Korff's brief opposition, 11 pages in all, devoted most of its pages to the circumstances in this court, and concluding in a brief two-page argument that it was law of the case. Among other things, Korff's opposition argued that "In the Court of Appeal Goodrich represented the amount of reasonable fees and costs she incurred. After the Court of Appeal granted Goodrich's request for

---

[1] Which provides in pertinent part as follows: "(a) In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs."

fees, in the full amount, Goodrich raised no objection and she sought no modification. The Court of Appeal declined Goodrich's invitation to establish an amount of attorney fee [*sic*] some different amount and it also declined the invitation to remand a determination of reasonable fees to this court. The doctrine of the law of the case requires this court to follow the determination made by the Court of Appeal."

Korff also argued that Clausen made contradictory claims, claiming in the court of appeal that $49,875 based on $350 an hour was "reasonable compensation," then claiming in the probate court that reasonable compensation was "actually $199,306.12 based upon a rate of $675 per hour."[2] And, Korff argued, the administrator's attorney "did a comparable amount of work and obtained the exact same result" as Goodrich's counsel, was awarded only $41,209 by this court based on an hourly rate of $350, yet had "not sought additional compensations."

Following Goodrich's reply, the motion came on for hearing on February 28, 2020. One thing that did develop at that hearing is that, as Goodrich herself describes it, "The parties disputed whether [Goodrich] was requesting a duplication of fees that had been awarded by the Court of Appeal. [Counsel for Goodrich] argued there was 'some duplication of services,' but no duplication of fees, because she was seeking 'the excess fees, the difference between $675 and $350, on those services that [Goodrich] made a claim for in the Court of Appeal; and the full $675 on the services that [Goodrich] did not present to the Court of Appeal.' " Counsel for Korff

---

[2] Korff's reference to the $199,306.12 figure was in error, as this was the total amount claimed by all three of Goodrich's attorneys. As noted, the amount claimed for Clausen was $153,630 before subtraction of the $49,875 and $103,755 after such subtraction and only Clausen claimed an hourly rate of $675.

10

responded that the "same fees" were being requested "but for different reasons," and argued that if this were allowed, "they could ask for the same fees over and over again, depending on if they can come up with different reasons for it."

The probate court continued the matter to April 3, and in the interim allowed the parties to file supplemental briefs. The supplemental briefs were filed, included among which was Korff's submission of a declaration of an appellate specialist who in essence testified that the reasonable rate for the services of an appellate specialist with comparable experience to Clausen was $350–$400 an hour.

The probate court vacated the April 3 hearing and took the matter under submission. And on July 2, the court issued its order, a comprehensive 12-page analysis of the issue that, as pertinent here, denied Goodrich additional fees sought for the work of Clausen (with the exception of $4,000 awarded for his work on the fee motion to the extent it was successful for the work of Nevin and Wintle.)

In its introductory paragraph, the court distilled the issue before it, as follows: "In its decision, the Court of Appeal found that Korff's appeals were frivolous and ordered Korff and her attorney to pay $49,875 . . . in sanctions to Goodrich for attorneys' fees incurred by her in connection with the appeals. Goodrich now seeks a further attorneys' fees award from the trial court. Her request includes fees for time spent by her appellate attorney . . . Clausen that was presented in the sanctions motion to the Court of Appeal as well as time that was not presented to the Court of Appeal. With respect to the former, attorney Clausen seeks reimbursement at a reasonable, market rate for attorneys in the community in which he practices and not the $350 . . . per hour he asked the Court of Appeal to award. He also seeks reimbursement

11

for 209.4 hours of attorney time in connection with the appeal, instead of the 142.5 hours he submitted to the Court of Appeal, and another 18.2 hours to prepare his current motion. He does concede that Korff should receive a credit or off-set in the amount of that court's award against any award made by this court. [¶] Goodrich's trial counsel, Edward Nevin and Roger Wintle, also seek awards of contractual attorneys' fees from Korff for work they or their associates performed in connection with Korff's frivolous appeals."

Then, after discussion of the record before it, the court first rejected Korff's argument based on law of the case. There followed the court's thorough analysis, rejecting Goodrich's claims for the additional fees sought for Clausen's work. This was that analysis:

"At the end of the day, this court must decide whether or not Goodrich's fees motion is reasonable, in whole or in part, and there are other analogous doctrines that may apply.

"When determining the reasonableness of a contractual attorneys' fees request, the court goes through a multi-step process. A lodestar amount is calculated based upon the hours found necessary by the court multiplied by a reasonable market rate as opposed to the actual rate agreed to between the attorney and his or her client. (*Ketchum v. Moses* [(2001) 24 Cal.4th] 1122, 1133–1136.) The trial court can then augment or modify the lodestar depending upon a variety of factors (including the contingent nature of a fee agreement where the risk of losing is a factor to consider and the attorney's level of skill and experience). (*Ibid.*) As Goodrich points out, that process results in the total amount of the fees awarded 'absent special circumstances rendering the award unjust.' (*Id.*)

"With respect to the contractual attorneys' fees requested by attorney Clausen, the court finds that such special circumstances exist, and declines to

12

award Goodrich any further fees for his services beyond those awarded as sanctions by the Court of Appeal. There are a number of reasons for this, including, without limitation the following:

"(1) Before this court, attorney Clausen opines that a reasonable rate for his services is $675 per hour; he told the Court of Appeal a reasonable rate was as low as $550 per hour and as high as $700 per hour; among the 207.9 hours he requests payment for are at least 15 hours he spent unsuccessfully opposing Korff's motion to consolidate her three appeals (i.e., Goodrich did not prevail on that issue), and another five hours are described as 'draft opposition to motion to compel' when such a motion appears to be absent from the appellate record [citation];

"(2) Just like trial courts are normally in a better position to evaluate the necessity of and the reasonableness of attorneys' fees incurred before them, [citation], so are Courts of Appeal in a better position to determine the necessity and reasonableness of such fees incurred before them. Clearly, the Court of Appeal thought that both the hours attorney Clausen submitted and the $350 hourly rate he claimed on behalf of Goodrich were 'reasonable.'

"(3) Based upon the arguments at the initial hearing of this motion, it appears that attorney Clausen was concerned that the Court of Appeal might find the nature and extent of Goodrich's total fee request unreasonable if he submitted the number of hours and his currently requested $675 hourly rate to it (e.g., experienced attorney Hearst whose declaration [Korff] submitted in opposition to the current motion, charges $400 per hour for appellate work in the same market);

"(4) Attorney Clausen describes his representation of Goodrich as being 'purely on a contingency basis,' but then goes on to state that he is to receive $350 per hour 'up to a specified maximum, if a recovery is obtained and

13

additional fees if attorneys' fees are recovered.' (Par. 15, Clausen Decl. filed 1/13/2020). How those 'additional fees' were to be determined between him and Goodrich is unknown. Clearly, he didn't represent her on a purely contingent basis. Since he didn't attach his fee agreement with the motion nor specify the 'maximum' he referred to in his declaration, the court is hard-pressed to determine what real risk, if any, he took on by representing Goodrich on appeal;

"(5) The equities are against Goodrich on this—she had a willing Court of Appeal to whom she submitted attorney Clausen's fees claim that it actually awarded without reduction, and advances no substantial reason to this court why that first bite at the reasonableness apple should actually and *reasonably* be worthy of a second bite. Indeed, Goodrich's sanctions motion to the Court of Appeal asked it to award attorneys' fees sanctions of $49,875 'or in the alternative . . . remand the matter to the trial court to determine the reasonable value of the fees and expenses incurred. . . .' [Citation.] The Court of Appeal chose not to remand the fee request, but instead granted it, thereby determining that the amount it awarded represented the reasonable value of the attorney Clausen's fees and costs incurred by Goodrich on appeal.

"Based on the foregoing, the court holds that Goodrich is judicially and equitably estopped from seeking additional fees for attorney Clausen's work opposing the appeal. Judicial estoppel precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position."

In addition, the court noted that, while the time records of attorneys Nevin and Wintle were not submitted to this court, "[a]mong other issues, their time combined with Mr. Clausen's time raise the issue of whether or not

14

the efforts of three experienced attorneys, and at least one associate, were reasonably necessary to oppose three frivolous appeals."

Following more analysis, the court went on to award fees for the work of Nevin and Wintle (and his associate), though in amounts less than requested, going on to note that "attorney Homer on behalf of administrator Kiernan obtained comparable results with fewer lawyers and fewer hours." Finally, the court awarded $4,000 for the work of Clausen to the extent he was successful on the fee motion for the work of Nevin and Wintle.[3]

On August 22, Goodrich appealed that portion of the order denying most of the fees sought for the work of Clausen.

To bring the story current, Korff's brief asserts that on April 13, 2021, after Goodrich's opening brief on this appeal was filed, Goodrich filed another pleading seeking an award against Korff. In Korff's words, Goodrich "filed yet another motion in the probate court for the imposition of sanctions under Code of Civil Procedure section 128.5 and section 128.7 against Nancy Korff and her attorney, Thomas C. Tagliarini, wherein she seeks an additional sanctions in the amount of $465,023.41. That amount includes additional attorneys' fees for her three attorneys, Mr. Nevin, Mr. Wintle, and Mr. Clausen." Goodrich's reply brief acknowledges the filing of this motion, but asserts that it "did not seek [to] ask the probate court to award additional attorney fees to Mr. Clausen. Rather it asked the probate [court] to reimburse to Ms. Goodrich $17,500 she paid to Mr. Clausen in attorney fees. [Citation.]"

---

[3] These three awards are not involved in this appeal.

15

## DISCUSSION

### Introduction

Goodrich has filed a 49-page opening brief. Following a short introduction, the brief has a 22-page (!) description of her motion for attorney fees. The argument follows, 15-pages in total, consisting of two arguments. The first, comprising over half of those pages, is that the "law of the case doctrine does not apply," an argument that is puzzling, as the court held for Goodrich on the issue. Goodrich's second argument is that the "probate court's application of judicial and equitable estoppel was erroneous and not supported by substantial evidence." The argument is off the mark, as it ignores the probate court's detailed analysis described above—not to mention the law of attorney fees.

### The Law of Attorney Fees

Some 44 years ago, in a case affirming the denial of attorney fees following plaintiff's voluntary dismissal without prejudice, our Supreme Court observed that an "award of contractual attorney fees is governed by equitable principles." (*International Industries, Inc. v. Olen* (1978) 21 Cal.3d 218, 224 (*Olen*), superseded by statute on other grounds as stated in *Santisas v. Goodin* (1998) 17 Cal.4th 599, 622.) Twenty-two years later, citing *Olen* and other cases, the Supreme Court distilled the law as follows:

"Civil Code section 1717 provides that '[r]easonable attorney's fees shall be fixed by the court.' As discussed, this requirement reflects the legislative purpose 'to establish uniform treatment of fee recoveries in actions on contracts containing attorney fee provisions.' (*Santisas v. Goodin*, *supra*, 17 Cal.4th at p. 616.) Consistent with that purpose, the trial court has broad authority to determine the amount of a reasonable fee. (*International Industries, Inc. v. Olen*, *supra*, 21 Cal.3d at p. 224 ['[E]quitable considerations

16

[under Civil Code section 1717] must prevail over . . . the technical rules of contractual construction']; *Beverly Hills Properties v. Marcolino* (1990) 221 Cal.App.3d Supp. 7, 12 ['the award of attorney fees under section 1717, as its purposes indicate, is governed by equitable principles']; *Montgomery v. Bio-Med Specialties, Inc.* (1986) 183 Cal.App.3d 1292, 1297 [trial court has 'wide latitude in determining the amount of an award of attorney's fees' under Civil Code section 1717]; *Vella v. Hudgins* (1984) 151 Cal.App.3d 515, 522 ['The amount to be awarded in attorney's fees is left to the sound discretion of the trial court'].)  As we have explained:  'The "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong" '— meaning that it abused its discretion.  (*Serrano v. Priest* (1977) 20 Cal.3d 25, 49; *Fed-Mart Corp. v. Pell Enterprises, Inc.* (1980) 111 Cal.App.3d 215, 228 [an appellate court will interfere with a determination of reasonable attorney fees 'only where there has been a manifest abuse of discretion']."  (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1094–1095.)

So, if the construction or application of a contractual fee provision could lead to oppressive results, equitable principles can prevail, illustrated, for example, by *EnPalm, LLC v. Teitler* (2008) 162 Cal.App.4th 770, 773–775, where the Court of Appeal held that the trial court properly applied equitable principles to reduce contractual attorney fee award by 90 percent.  As a leading commentary describes it, "**Guided by equitable principles:**  In determining a reasonable fee, Civil Code section 1717's equitable considerations 'prevail over . . . the technical rules of contractual construction.'  (*PLCM Group, Inc. v. Drexler*, *supra*, 22 Cal.4th at p. 1095; *Hunt v. Fahnestock* (1990) 220 Cal.App.3d 628, 633; see *EnPalm, LLC v.*

17

*Teitler*[, *supra*,] 162 Cal.App.4th [at pp.] 773–775 . . . .)" (Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2021) ¶ 17:986.)

We review an order on attorney fees for abuse of discretion. (*Calvo Fisher & Jacob LLP v. Lujan* (2015) 234 Cal.App.4th 608, 620.) Abuse of discretion has been described in terms of a decision that "exceeds the bounds of reason" (*People v. Beames* (2007) 40 Cal.4th 907, 920), or one that is arbitrary, capricious, patently absurd, or even whimsical. (See, e.g., *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 390 [" ' "arbitrary, capricious, or patently absurd" ' "]; *People v. Benavides* (2005) 35 Cal.4th 69, 88 [ruling "falls 'outside the bounds of reason' "].) In its most recent observation on the subject, our Supreme Court said that "A ruling that constitutes an abuse of discretion has been described as one that is 'so irrational or arbitrary that no reasonable person could agree with it.' " (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.) This hardly describes the order here.

**Goodrich Has Not Demonstrated Error**

As quoted above, the trial court described how "special circumstances" were present here, circumstances that could render an award "unjust." The court then said there were a "number of reasons" for those "special circumstances," and went on to describe, "without limitation," five, beginning with reference to how the motion sought fees for work that was unsuccessful. It then turned to commenting on what this court thought was reasonable, both as to the hourly rate and the hours spent. The court then discussed the fact that Clausen's fee agreement was not attached to the motion, and that the court was "hard pressed to determine what real risk if any, [Clausen] took on by representing Goodrich on appeal." And perhaps most importantly of all, the court found that "[t]he equities are against Goodrich on this," going

18

on to note that Goodrich "advances no substantial reason to this court why that first bite at the reasonableness apple should actually and *reasonably* be worthy of a second bite.  Indeed, Goodrich's sanctions motion to the Court of Appeal asked it to award attorneys' fees sanctions of $49,875 'or in the alternative . . . remand the matter to the trial court to determine the reasonable value of the fees and expenses incurred. . . .' [Citation.]  The Court of Appeal chose not to remand the fee request, but instead granted it, thereby determining that the amount it awarded represented the reasonable value of the attorney Clausen's fees and costs incurred by Goodrich on appeal."  Finally, the court observed that the hours spent by the three attorneys, Clausen, Nevin, and Wintle, raised the issue of whether those hours were "reasonably necessary to oppose three frivolous appeals."

None of this is mentioned, let alone discussed, in Goodrich's argument.

Superimposed on the above is the fact that Goodrich's position on the motion as to the claimed work of Clausen was significantly inflated in both relevant aspects—hours claimed and hourly rate—than that represented to this court.  That cannot be overlooked.

Beyond the equitable considerations, courts have vast discretion on the issue of attorney fees, and can, for example, reduce an attorney fee award— indeed, refuse one altogether—if the fee request appears unreasonably inflated.  (*Meister v. Regents of University of California* (1998) 67 Cal.App.4th 437, 448.)  Likewise a court may determine that the fee requested is duplicative or excessive.  (*Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 161; *Cruz v. Ayromloo* (2007) 155 Cal.App.4th 1270, 1278.)

Were all that not enough, Goodrich's appeal is undercut by the actual language of the attorney fee provision here, that the "prevailing party . . . will

19

be entitled to such reasonable attorney fees . . . as may be incurred." There is no showing here as to what, if any, fees were "incurred."

*San Dieguito Partnership v. San Dieguito River Valley Regional Etc. Auth.* (1998) 61 Cal.App.4th 910, 919 (*San Dieguito*), disapproved on another ground in *PLCM Group v. Drexler, supra*, 22 Cal.4th at p. 1097, fn. 5, is instructive. There, a partnership unsuccessfully sued a joint powers authority (JPA) for breach of a settlement agreement. The agreement contained a provision entitling the prevailing party in any action to enforce the agreement " 'to an award in the amount of attorneys' fees and costs incurred in connection with the prosecution or defense of such action.' " (*Id.* at p. 914.) The trial court awarded the successful JPA a lodestar amount calculated by multiplying the number of hours spent on the case by " 'fair market hourly rates,' " even though counsel actually charged the JPA " 'below market rates' . . . ." (*Id.* at p. 915.)

Plaintiff partnership appealed, arguing that under the terms of the settlement agreement, JPA was entitled to recover only those attorney fees it actually "incurred," and the court was without discretion to award a greater amount. (*San Dieguito*, at p. 917.) The appellate court agreed and reversed, holding that "even under section 1717," where the parties "specifically agree the prevailing party shall be entitled to an award 'in the amount of attorneys' fees and costs incurred,' the court has no . . . power" to award fees "in an amount greater than the prevailing party actually incurs . . . ." (*Id.* at p. 919.)

We end with the observation that it is true that Korff took positions inconsistent with the settlement and, having lost, appealed the ruling, appeals we held to be frivolous. We sanctioned Korff and her attorney for that, awarding Goodrich everything she sought in this court—based, not

20

incidentally, on Clausen's testimony under oath—in the amount we determined was reasonable based on what Goodrich put before us. Korff has now paid Goodrich over $117,000 for the work of lawyers defending against the frivolous appeals: $49,875 for Clausen, $15,240 for Nevin, $13,437 for Wintle, and $41,209 for Homer. The trial court determined that was enough. We agree.

## DISPOSITION

The order of July 2, 2020, is affirmed. Korff shall recover her costs on appeal.

_____

Richman, J.

We concur:

_____

Kline, P. J.

_____

Miller, J.

*Korff v. Goodrich* (A160917)